

PEROFF SAUNDERS P.C.
745 5TH AVENUE | SUITE 500
NEW YORK, NY 10151
TEL: 646.898.2030
WWW.PEROFFSAUNDERS.COM

Darren W. Saunders
Partner
dir: 646.898.2052
dsaunders@peroffsaunders.com

February 27, 2020

VIA ECF (REDACTED AND UNREDACTED) AND CONFIRMATION BY MAIL

Honorable William H. Pauley III
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Room 1920
New York, New York 10007



RE: Easy Spirit, LLC v. Skechers U.S.A., Inc. and Skechers U.S.A., Inc. II, No. 1:19-cv-03299 (WHP)

Dear Judge Pauley:

Pursuant to Your Honor's Individual Rule III(A)(iv.) and Local Rule 37.2, the parties respectfully submit this joint letter. Plaintiff Easy Spirit, LLC ("Easy Spirit") seeks to compel the deposition of Skechers' CEO Robert Greenberg; Skechers refuses to produce Mr. Greenberg for a deposition. As explained below, Easy Spirit contends that Mr. Greenberg possesses first-hand knowledge concerning Skechers' adoption and use of the trademark at issue, and he was apparently the active decision maker who instructed that Skechers' mark be changed from "COMMUTE" to "COMMUTE TIME" to more closely resemble in meaning and connotation Easy Spirit's registered "TRAVELTIME" trademark. Skechers contends that Easy Spirit's deposition request is simply designed to harass Mr. Greenberg and is being used as mechanism to deflect from its own discovery failings. Indeed, Mr. Greenberg does not have unique knowledge sufficient to compel the deposition of an "Apex" witness, and Easy Spirit has steadfastly refused to pursue alternative means to seek the discovery it requests, revealing its true motivations in seeking to depose Mr. Greenberg.

The parties have attempted on multiple occasions to resolve the matter, exchanging numerous emails and letters setting forth their respective positions, and believe they have fully complied with the "meet and confer" rule. (Fed. R. Civ. P. 37(a)(2)(A)). Specifically, telephonic meet and confers were also held between counsel on February 19 (2:00 - 2:45pm between D. Saunders (Easy Spirit) and R. Lee and A. Ligotti (Skechers)) and again on February 25, 2020 (2:00 - 2:20pm between D. Saunders and J. Kasner (Easy Spirit) and R. Lee and A. Ligotti (Skechers)). The parties could not come to an agreement regarding the deposition of Mr. Greenberg– Easy Spirit still seeks Mr. Greenberg's deposition and Skechers still refuses to make Mr. Greenberg available.

**Plaintiff's Section**

Dated: March 2, 2020
New York, New York

SO ORDERED:

*Application granted. The parties shall appear for a pre-motion conference on Wednesday, March 11, 2020 at 11:00 a.m. At the conference, this Court will also address the parties' proposed redactions to their pre-motion letter and exhibits.*

WILLIAM H. PAULEY III
U.S.D.J.

Easy Spirit is a pioneer of women's comfort shoes. Its Traveltime shoe has consistently been the number one selling style of all Easy Spirit shoes for every year since its introduction in 2004. In 2006, Traveltime was the number one selling shoe in the country for all women's fashion shoes sold in U.S. department stores, according to NPD, a major market research firm. Since then, the Traveltime shoe has been Easy Spirit's most successful product. The TRAVELTIME trademark is registered in the U.S. Patent and Trademark Office under U.S. Reg. No. 4,505,161. The registration is in full force and effect and is incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065. In addition, Easy Spirit and its predecessors have used the same overall design elements of the Traveltime shoe since its introduction and, the design elements, in combination, constitute a protectible trade dress. *See*, Complaint, Paragraph 21.

Discovery to date has revealed an extraordinary scheme by Skechers, a direct competitor of Plaintiff Easy Spirit with virtually unlimited resources, to copy every aspect of Easy Spirit's Traveltime shoe, and to name it with a mark that was calculated to deceive, confuse and ride on Easy Spirit's goodwill. The documents and deposition testimony of Skechers' witnesses demonstrate a carefully planned effort to displace Easy Spirit from the marketplace for its Traveltime shoes by offering copycat shoes with a confusingly similar trademark at a lower wholesale price.

The designer of the Skechers' shoe testified that he sent an Easy Spirit Traveltime shoe to Skechers' factory and instructed that a new Skechers shoe be produced with the "same exact" mid-sole and outsole dimensions as the Easy Spirit Traveltime shoe. (Teteriatnikov dep. tr. 139:19-144:18, Exbibit 8; Exhibit A. hereto). Thereafter, Skechers slavishly copied the upper styles, colors and patterns of the Easy Spirit Traveltime shoes to create total look-alike products. (See Exhibit B hereto). Significantly, Skechers' adopted and began using the name "COMMUTE" when the shoe was introduced and sold in 2018. Then, in the fall of 2018, Skechers changed the name of the shoe from "COMMUTE" to "COMMUTE TIME." According to Jessica Baruch, Skechers' Senior Director of Merchandising and Product Development (and who had ultimate approval authority for each of the accused Skechers shoes sold), REDACTED



(Baruch dep. tr. 76:11-18, Exhibit C. hereto). A number of Skechers documents corroborate this testimony, including a September 11, 2018 email from Melissa Hobbs, Skechers' Senior Product Manager (responsible for the division that creates and sells the accused Commute Time shoe): REDACTED (Hobbs dep. ex. 46, Exhibit D. hereto). (REDACTED) (Hobbs dep. tr. 195:12-14, Exhibit E. hereto).

Further, on February 12, 2020, after the depositions of Skechers' witnesses were taken in December 2019 and January 2020, Skechers produced additional documents that directly implicate Mr. Greenberg in the design and development of the accused Skechers' shoes, including emails referring to the Skechers' copies of the Easy Spirit Traveltime shoes as the REDACTED (See, Exhibit F. hereto). In view of the foregoing, it is apparent that Mr. Greenberg was actively and personally involved in activities that go to the heart of Easy Spirit's claims. At a minimum however, he clearly possesses relevant, discoverable information.

Under the applicable case law, there is no question that Easy Spirit may depose Mr. Greenberg. First, it is fundamental that high-ranking corporate executives are not immune from discovery, nor are they "automatically given special treatment which excuses them from being deposed." *Scott v. Chipotle Mexican Grill, Inc*., 306 F.R.D. 120, 122 (S.D.N.Y. 2015) (citing *General Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 83 (S.D.N.Y.2002)). Second, "plaintiffs have no burden to show that the deponents have any relevant knowledge." (*Id.,* citing *In re Garlock*, 463 F.Supp.2d 478, 481 (S.D.N.Y.2006)). Instead, the Courts consider the likelihood that the individual possesses relevant knowledge. *Id.* at 124.

Here, Easy Spirit has shown that Mr. Greenberg not only has relevant knowledge, but had first-hand involvement in the alleged infringing activities. Specifically, Mr. Greenberg was instrumental in changing the Skechers' name for its copycat shoes from the confusingly similar name "COMMUTE" to an even closer and more confusing name "COMMUTE TIME." Under the circumstances, Easy Spirit should be permitted to depose Mr. Greenberg. By way of only one of many examples of high-level executives being ordered to be deposed by the federal courts, including the Southern District of New York, in the *Chipotle* case, the Court noted that the co-CEO of Chipotle Mexican Grill, Inc. was busy and may have "little to testify about." (*Id.*). Nonetheless, the Court ordered his deposition because he likely "has relevant personal knowledge" of the issues in the action. *Id*. Here, Easy Spirit has shown that Mr. Greenberg has relevant personal knowledge of material facts, and therefore he cannot be shielded from discovery merely because of his title and position.

For the reasons expressed above, Easy Spirit respectfully requests that the Court order Mr. Greenberg to appear for a deposition at a mutually convenient time and place.

**Skechers' Position**
Easy Spirit's request to depose Mr. Greenberg, one of Skechers' founders and its CEO, is a thinly-veiled ploy to harass Skechers, and deflect from Easy Spirit's own discovery failings and the damning admissions of its witnesses during deposition. Easy Spirit grossly exaggerates Mr. Greenberg's involvement in the relevant issues in this case, and has already deposed the true decision makers involved in the design and development of the accused shoes. Despite repeated offers from Skechers to provide discovery on the discrete issues that it claims that it needs to raise with Mr. Greenberg, Easy Spirit doggedly insists without support that only Mr. Greenberg can answer its questions.

**Skechers' Commute Time Shoe.** The accused "Skechers Commute Time" shoe is a women's comfort shoe with an open-back upper and an athletic-style midsole and outsole. *See* Compl.

(Dkt. 1), ¶23. Easy Spirit has already deposed the three witnesses responsible for the design and development of the Commute Time. Jessica Baruch, Sr. Dir. of Merchandising and Product Development, testified that it was her decision to develop the new open-back shoe that would become the Skechers Commute Time. SK Ex. 1 (Baruch Dep. Tr. 22:8-20). At the time, she did not have an open-back in her shoe division, and she wanted to capitalize on a popular Skechers design (D'Lites) offered in other shoe divisions. *Id*. at 48:6-49:13. She instructed Saava Teteriatnikov, VP of Design, to design a new shoe with the D'Lites as the inspiration. *Id*.

Mr. Teteriatnikov testified that his design was a natural progression from the numerous open-back designs he and others at Skechers had developed as far back as the late 1990s. SK Ex. 2 (Teteriatnikov Dep. Tr. 93:14-95:24; 98:16-99:23; 101:8-105:24; 109:2-14). Despite Easy Spirit's suggestion to the contrary, Mr. Teteriatnikov did not send a sample Easy Spirit shoe to China so it could be copied. Mr. Teteriatnikov had already designed the Skechers Commute Time, but his design drawings did not contain specific relative measurements for the midsole. He wanted the factory to measure the height and width of the midsole of the Easy Spirit shoe in order to input those measurements into the design blueprint for the midsole he had already designed. *Id*. at 140:22-144:14; 171:17-173:7.

Melissa Hobbs, Sr. Product Manager, testified that she came up with the Skechers Commute name herself because it had a similar sound and meaning to other shoes in her line, such as "Pedestrian." SK Ex. 3 (Hobbs Dep. Tr. 39:2-42:7; 58:4-59:15). Skechers also has in place a protocol for clearing new names used on its shoe styles. *Id*. at 39:2-42:7. It utilized that protocol when it adopted both its initial Skechers Commute name, and when it changed the name to Skechers Commute Time, and those names were cleared by Skechers' legal department. Thus, relevant here, Mr. Greenberg was not responsible for the decision to develop the accused shoe, any aspect of its design, or the decision to adopt the name Skechers Commute prior to the shoe's launch. As Ms. Baruch testified, he only later decided after the shoe had been launched that he did not like the name and wanted it changed to Skechers Commute Time.

**Easy Spirit's Discovery Failings and Admissions**. Easy Spirit's request to depose Mr. Greenberg flies in the face of the minimal effort Easy Spirit itself has put forth to pursue its claims. From the outset, Skechers has sought discovery concerning Easy Spirit's design, marketing and sales of its Traveltime shoes. Notably, the plaintiff – Easy Spirit LLC – was only formed in 2016 to acquire certain of the "Easy Spirit" assets, including IP, from Nine West before the business was going to be shuttered. At every turn, Skechers' counsel was repeatedly told that certain documents, like the 2016 Asset Purchase Agreement, product line sheets, and marketing and sales budgets and plans, did not exist; and that no documents relating to the "Easy Spirit" business from prior to the 2016 acquisition were available. Skechers was forced to prepare to depose Easy Spirit's witnesses accordingly.

Easy Spirit's witnesses/corporate designees, however, told a decidedly different story, testifying at length about the existence of these very documents and the ease at which they could be located. Easy Spirit's witnesses confirmed that they had not been asked to collect these documents. Skechers detailed Easy Spirit's failings in a letter dated February 15. SK Ex. 4. Caught with its proverbial hand in the cookie jar, Easy Spirit has now produced many of the previously unsearched for and/or withheld documents, but its production still remains

incomplete. And despite repeated requests for dates in advance of the pending fact discovery deadline, Easy Spirit still has not made its witnesses available to be re-deposed.

Moreover, during their depositions, Easy Spirit's witnesses admitted that Easy Spirit does not have the enforceable trade dress rights it claims to own. Easy Spirit's Design Director, Henry Besanceney, admitted that numerous Skechers open-back designs offered from 1999 through 2004 (before the Traveltime) have all of the elements comprising Easy Spirit's alleged trade dress. SK Ex. 5 (Besanceney Dep. Tr. 144:6-192:13). He also admitted that the allegedly distinctive Traveltime midsole design is common in athletic and athleisure shoes (*id*.), and that many of the upper designs and patterns offered on the Traveltime are in fact owned by third-party customers, not Easy Spirit. *Id*. at 92:7-95:7, 100:9-102:9, 106:14-108:9.

**Easy Spirit's Request to Depose Mr. Greenberg.** On January 24, 2020, Easy Spirit requested the deposition of Mr. Greenberg via an e-mail otherwise directed to other issues. *See* SK Ex. 6. In response, Skechers cited to a litany of cases articulating that depositions of high-ranking officers and executives such as Mr. Greenberg, known as "Apex Witnesses" are disfavored in certain circumstances, such as when others can provide the information sought. *See* SK Ex. 7 (1/31 R. Lee Letter); *see also Consol. Rail Corp. v. Primary Indus. Corp.*, 1993 U.S. Dist. LEXIS 12600, at *2-3 (S.D.N.Y. Sep. 10, 1993) ("where other witnesses have the same knowledge, it may be appropriate to preclude a redundant deposition of a highly-placed executive."). The letter went on to propose no less than five alternative forms of discovery to address Easy Spirit's request for information. *Id*., at 2.

Skechers received no substantive response; instead Easy Spirit simply reiterated its request. *See* SK Ex. 8 (2/3 D. Saunders Letter). Skechers responded that Easy Spirit's reliance on Ms. Baruch's testimony only confirmed that Mr. Greenberg's testimony would be at best duplicative, again with citations to legal support. *See* SK Ex. 9 (2/7 R. Lee Letter). Skechers also reiterated its proposal for "multiple, other, less burdensome modes of discovery." *Id*. Easy Spirit again ignored Skechers' offers and authority, reiterating that it believed it had a right to burden Mr. Greenberg without any support for its claim. *See* SK Ex. 10 (2/10 D. Saunders E-mail).

The parties continued to discuss the matter during several meet-and-confers regarding Easy Spirit's aforementioned deficiencies. *See* SK Ex. 11 (2/19 A. Ligotti E-mail); SK Ex. 12 (2/25 A. Ligotti E-mail). At no point, however, did Easy Spirit provide any authority to support its position, nor did it attempt to explain what "unique, first-hand, non-duplicative knowledge" Mr. Greenberg allegedly possessed. It also failed to entertain *any* of the various discovery alternatives proposed. In fact, Easy Spirit *declined* alternatives in its myopic focus to harass Mr. Greenberg. Specifically, after requesting a full custodial document production and deposition of the Skechers employee who spoke with Mr. Greenberg, Emma Stevens, Easy Spirit simply stopped responding to Skechers' offers for her deposition. *See, e.g.*, SK Ex. 13 (2/17 R. Lee E-mail); SK Ex. 11 (2/19 A. Ligotti E-mail); SK Ex. 14 (2/21 Lee E-mail); SK Ex. 12 (2/25 A. Ligotti E-mail); *see also M. A. Porazzi Co. v. The Mormaclark*, 16 F.R.D. 383, 383 (S.D.N.Y. 1951) (denying deposition where the apex witness "could contribute nothing beyond that which would be gleaned from an examination of the General Claims Agent").

To date, Easy Spirit has chosen to avoid deposing Ms. Stevens, despite knowing she could testify to the same information it claims it needs from Mr. Greenberg. This supports Skechers' position that the deposition of Mr. Greenberg is designed to harass. *See General Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 82-83 (S.D.N.Y. 2002) (noting the impropriety of apex depositions when, among other things, the requesting party has "not yet attempted to obtain information from lower level executives"). Skechers even offered to make Ms. Baruch available for a second deposition on Easy Spirit's concerns over three emails, which Easy Spirit again declined to undertake in favor of pursuing Mr. Greenberg. *See* SK Ex. 12.

Easy Spirit's "head in the sand" approach is instructive of its intent, not to obtain necessary, relevant discovery, but rather to engage in the harassing litigation tactics that gave rise to the apex doctrine in the first instance. *See Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 102 (S.D.N.Y. 2001) ("likelihood of harassment and business disruption are factors to be considered in deciding whether to allow discovery of corporate executives."). Despite its claims that the information sought is key its case, Easy Spirit chose to wait until the close of fact discovery to raise the issue with the Court. It also knowingly let the deadline for contention interrogatories and other follow-on discovery come and go, without advancing a single request directed to its "important" theory as to Mr. Greenberg's intent for the name change. One would expect Easy Spirit to have taken advantage of all the discovery tools available to obtain such "critical" discovery. Such inaction speaks volumes.

Notwithstanding the foregoing, which strongly indicates its ulterior motivation, Easy Spirit's supposed "justification" for needing Mr. Greenberg's testimony does not outweigh the burden to Skechers in providing it. *See Reif v. CAN*, 248 F.R.D. 448, 454 (E.D. Pa. 2008) (refusing apex deposition because "the burden and expense of [the] deposition 'outweigh[ed] its likely benefit,' taking into consideration the 'importance of the proposed discovery in resolving the issues' in the[e] action"); Fed. R. Civ. P. 26(b)(1). In the present instance, the "importance" could not be lower (notably, the Skechers Commute Time amounts to less than 0.2% of Skechers' annual domestic sales volume), while the burden could not be higher. Indeed, "[c]ourts have recognized an additional layer of protection for senior corporate executives subject to depositions." *Hallmark Licensing LLC v. Dickens Inc.*, 2018 U.S. Dist. LEXIS 210662, at *13 (E.D.N.Y. Dec. 13, 2018).

Easy Spirit's refrain that it needs Mr. Greenberg to ask about *why* Skechers changed the name of the accused shoe goes, at best, to intent; it is undisputed that the name change occurred. Therefore, Skechers' "intent" with regard to the "Skechers Commute Time" name can be discerned from a single interrogatory, declaration, or from deposing Ms. Stevens, a measure Easy Spirit continually avoids. Even assuming that the "intent" behind the name change is relevant, Easy Spirit has entirely failed to demonstrate how such information is "important . . . in resolving the issues." Fed. R. Civ. P. 26(b)(1). On the flip-side, Mr. Greenberg is the CEO of Skechers and even a half-day deposition, and the time required to prepare for it, would be severely disruptive to Skechers' business. *See Vaigasi v. Solow Mgmt. Corp.*, 2016 U.S. Dist. LEXIS 18460, at *52-53 (S.D.N.Y. Feb. 16, 2016) (*citing* Fed. R. Civ. P. 26(b)(2)(C)). At bottom, the minimal importance to the actual of merits of the case is far outweighed by the burden to Skechers, especially before Easy Spirit has attempted other, less burdensome, alternatives.

Respectfully submitted,

By: _s/Darren W. Saunders_
    Darren W. Saunders
    DSaunders@peroffsaunders.com
    Mark I. Peroff
    Mark.Peroff@peroffsaunders.com
    Jason H. Kasner
    JKasner@peroffsaunders.com
    PEROFF SAUNDERS, P.C.
    745 Fifth Avenue, Suite 500
    New York, New York 10151
    (646) 898-2052

    *Attorneys for Plaintiff*
    *Easy Spirit, LLC*

By: _s/Andrew J. Ligotti_
    Andrew J. Ligotti
    ALSTON & BIRD LLP
    90 Park Avenue
    New York, New York 10016
    Tel: (212) 210-1286
    Email: andy.ligotti@alston.com

    Robert L. Lee (*Pro Hac Vice*)
    ALSTON & BIRD LLP
    1201 West Peachtree St. NW
    Atlanta, GA 30309-3424
    Tel: (404) 881-7000
    Email: bob.lee@alston.com

    Marshall A. Lerner (*Pro Hac Vice to be filed*)
    Vivian Z. Wang (*Pro Hac Vice to be filed*)
    Steven J. Kim (*Pro Hac Vice to be filed*)
    KLEINBERG & LERNER, LLP
    1875 Century Park E # 1150
    Los Angeles, CA 90067
    Tel: (301) 557-1511
    Email: mlerner@kleinberglerner.com
    Email: vwang@kleinberglerner.com
    Email: skim@kleinberglerner.com

    *Attorneys for Defendants Skechers U.S.A.,*
    *Inc. and Skechers U.S.A., Inc. II*