UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EASY SPIRIT, LLC,

                              Plaintiff,

               -against-

SKECHERS U.S.A., INC. and
SKECHERS U.S.A., INC. II,

                            Defendants.

---

Civil Action No. 1:19-cv-03299-WHP

**[REDACTED VERSION]**

**PLAINTIFF'S COUNTERSTATEMENT OF MATERIAL FACTS
TO DEFENDANTS SKECHERS U.S.A., INC. AND SKECHERS U.S.A., INC. II'S
<u>RULE 56.1 STATEMENT OF MATERIAL FACTS</u>**

## TABLE OF CONTENTS

**SECTION I:**  EASY SPIRIT'S RESPONSES TO SKECHERS' RULE 56.1 STATEMENT OF
                    MATERIAL FACTS …………………………………………………….. 1


**SECTION II:** EASY SPIRIT'S STATEMENT OF ADDITIONAL FACTS ………………...115

Pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 56.1(b), Plaintiff Easy Spirit, LLC ("Easy Spirit") hereby submits its Counterstatement of Material Facts in response to Defendants Skechers U.S.A., Inc. and Skechers U.S.A., Inc. II.'s (collectively, "Skechers") Rule 56.1 Statement of Material Facts ("SF").  Section I contains Easy Spirit's responses to each factual assertion asserted by Skechers in its SF,[1] without admitting that any of Skechers' statements are material.  Section II contains Easy Spirit's Rule 56.1 Statement of Material Facts that contains additional material facts asserted by Easy Spirit.

### SECTION I:   EASY SPIRIT'S RESPONSES TO SKECHERS' RULE 56.1 STATEMENT OF MATERIAL FACTS

**A.   The Parties and the Shoes at Issue**[2]

1.      In 2004, Plaintiff Easy Spirit, LLC's ("Easy Spirit" or "Plaintiff") predecessors-in-interest introduced the Traveltime shoe, which is a light-weight slip-on mule style with an open back "designed for maximum comfort and easy wearing." Compl., Dkt. 1 at ¶ 8-10.

**Plaintiff's Response:**  Undisputed

2.      In 2014, the Traveltime brand name was registered as a trademark on the Principal Register of the U.S. Patent and Trademark Office, under U.S. Registration No. 4,505,161. Compl., Dkt. 1 at ¶ 19; Compl. Ex. 6.

**Plaintiff's Response:**  Undisputed

---

[1] "Ex." refers to the exhibits contained in Easy Spirit's Appendix, filed concurrently herewith.
[2] Easy Spirit has included the headings found in Skechers' Rule 56.1 Statement for ease of reference. However, to the extent that such headings themselves contain factual statements themselves, Easy Spirit denies those statements.

3.      Skechers is an award-winning global brand with a focus on lifestyle and performance footwear products. Declaration of Jessica Baruch ("Baruch Dec.") at ¶ 5.

**Plaintiff's Response:**  Undisputed

4.      Skechers designed its "Commute" shoe in 2017 and introduced the shoe to consumers in early February 2018. Exhibit A to Declaration of Emily C. Welch ("Welch Dec.") (Deposition Transcript of Melissa Hobbs ("Hobbs Depo. Tr.")) at 73:7-19; Welch Dec. Ex. B (Rule (30(b)(6) Deposition Transcript of Skechers U.S.A., Inc. Designee Savva Teteriatnikov ("Teteriatnikov Depo. Tr.")) at 98:16-22; Welch Dec. Ex. C; Baruch Dec. at ¶¶ 6, 9.

**Plaintiff's Response:**  Undisputed

5.      The Skechers Commute shoe is a sporty, open-back style shoe in the company's Modern Comfort line. Welch Dec. Ex. D (Deposition Transcript of KariAnne Spear ("Spear Depo. Tr.")) at 34:22-35:7; Welch Dec. Ex. B (Teteriatnikov Depo. Tr.) at 96:12-24.

**Plaintiff's Response:**  Undisputed that the Skechers Commute shoe is an open-back style shoe in the company's Modern Comfort line. Disputed that it is "sporty." Skechers testified that the Commute Shoe is "casual." Welch Dec. Ex. D (Spear Depo. Tr.) at 35:6-7; Declaration of Darren W. Saunders ("Saunders Decl.") ¶ 3, Ex. 3, Deposition Transcript of Robert Greenberg ("Greenberg Dep. Tr.") at 20:13-16.

6.      Since launch through June 15, 2020, Skechers has sold REDACTED pairs of accused Skechers Commute or Skechers Commute Time shoes through its eCommerce website, Skechers retail stores, and wholesale channels, including third-party retail stores and eCommerce websites. Welch Dec. Ex. E.

**Plaintiff's Response:**  Undisputed

7.      Skechers changed the name of the Skechers Commute shoe to the Skechers

Commute Time shoe on skechers.com on September 25, 2018. Welch Dec. Ex. F; Welch Dec.

Ex. G. A box bearing the Commute Time logo was implemented on April 1, 2019. *See, e.g.*

Welch Dec. Ex. H; Welch Dec. Ex. I. Those new boxes reflecting that name change first shipped

on June 25, 2019. Baruch Dec. at ¶ 10.

**Plaintiff's Response:** Undisputed

**B.  The Claimed Easy Spirit Traveltime Trade Dress**

8.      Easy Spirit claims the elements of the Traveltime trade dress are: (1) a slip-on,

clog-style upper; (ii) a distinctive "swirl" mid-sole that runs from the base of the toe cap,

gradually widening as it flows to the heel; (iii) an indented curved line along the midsole from

the front to the heel; another indented line on the rear of the shoe; (iv) a combined contoured

midsole/outsole with an arch that creates an open area between the outsole and heel; (v) the

rubber outsole extending up from the bottom of the shoe to the front of the shoe to form a

bumper; and (vi) four circular design elements on the midsole at the heel segment. Compl., Dkt.

1 at ¶ 21.

> **Plaintiff's Response:** Disputed. Easy Spirit claims that the elements of the
>
> TRAVELTIME trade dress is the combination and overall design of the
>
> TRAVELTIME shoe, which contains the following elements: (1) a slip-on, clog-style
>
> upper; (ii) a distinctive "swirl" mid-sole that runs from the base of the toe cap,
>
> gradually widening as it flows to the heel; (iii) an indented curved line along the
>
> midsole from the front to the heel; another indented line on the rear of the shoe; (iv) a
>
> combined contoured midsole/outsole with an arch that creates an open area between the
>
> outsole and heel; (v) the rubber outsole extending up from the bottom of the shoe to the

front of the shoe to form a bumper; and (vi) four circular design elements on the

midsole at the heel segment. Compl., Dkt. 1 at ¶ 20, 21; Ex. 2, Declaration of Mark

DeZao ("DeZao Decl.") ¶ 7; Saunders Decl. ¶ 8, Ex. 4, Deposition Transcript of Mark

DeZao ("DeZao Dep. Tr.") at 142:14-23.

9.     A swirl midsole, where the midsole is narrower or shorter in height at the toe bed

compared to the heel, increasing between the point of the toe and the ball of the foot, dropping

down at the arch, and raising back up at the heel, is typical on athletic shoes and common on

athleisure shoes. Welch Dec. Ex. J (Rule 30(b)(6) Deposition Transcript Easy Spirit Designee,

Design Director Henry Besanceney, III ("Besanceney Depo. Tr.") at 147:7-149:5; 236:2-8.

> **Plaintiff's Response:**  Disputed. The cited evidence does not support Defendants'
>
> assertion. The "swirl" on the Skechers Sport Kozmiks Meteor shoe that Mr.
>
> Besanceney was questioned about is different than the "swirl" shown on the
>
> TRAVELTIME shoe and COMMUTE TIME shoe. Welch Dec. Ex. J (Rule 30(b)(6)
>
> Deposition Transcript Easy Spirit Designee, Design Director Henry Besanceney, III
>
> ("Besanceney Dep. Tr.") at 147:7-149:5; 236:2-8. Thus, his testimony regarding the
>
> "swirl" on the Skechers Sport Kozmiks Meteor shoe is entirely irrelevant here. *See*
>
> Skechers SF ¶ 67 for an image of the Skechers Sport Kozmiks Meteor shoe. A shoe can
>
> have a "swirl midsole" but still contain a completely different overall design with a
>
> completely different upper design and outsole design than the TRAVELTIME show,
>
> which gives the shoe and completely different overall impression. *See* Ex. 4, DeZao
>
> Dep. Tr. at 182:9-195:25.  *See generally*, Ex. 4, DeZao Dep. Tr. at 169:21-207:2
>
> (comparing the TRAVELTIME shoe with several third-party shoes and describing how
>
> the shoes can share similar elements but still maintain completely different designs for

the upper, midsole, or outsole that contribute to a completely different overall design impression).

10.   A toe bumper like the one on the Traveltime shoe is common in athletic sneaker type shoes. Welch Dec. Ex. K (Rule 30(b)(6) Deposition of Easy Spirit Designee, Senior VP of Product Design and Development Mark DeZao ("DeZao Depo. Tr.") at 194:8-196:4.

> **Plaintiff's Response:**  Disputed. The cited evidence does not support Defendants' assertion. The shape and design of toe bumpers on athletic sneaker type shoes or shoes in general can vary in ways that are not identical to the TRAVELTIME shoe. *See* Ex. 4, DeZao Dep. Tr. at 179:16-181:23. A shoe can have a "toe bumper" but still contain a completely different overall design with a completely different upper design, midsole design and outsole design than the TRAVELTIME SHOE, which gives the shoe and completely different overall impression. *Id.* at 186:3-187:8; *see generally*, Ex. 4, DeZao Dep. Tr. at 169:21-207:2 (comparing the TRAVELTIME shoe with several third-party shoes and describing how the shoes can share similar elements but still maintain completely different designs for the upper, midsole, or outsole that contribute to a completely different overall design impression).

11.   A toe bumper, as part of a shoe's outsole, contributes to the shoe's slip resistance. Welch Dec. Ex. J ("Besanceney Depo. Tr.") at 134:14-136:16.

> **Plaintiff's Response:**  Disputed. The statement depends on the shoe. The shape and design of toe bumpers on shoes can vary in ways that are not identical to the TRAVELTIME shoe. Ex. 4, DeZao Dep. Tr. at 179:16-181:23. A shoe can have a "toe bumper" but still contain a completely different overall design with a completely different upper design, midsole design and outsole design than the TRAVELTIME

SHOE, which gives the shoe and completely different overall impression. *Id*. at 186:3-187:8.

12.     Easy Spirit does not claim proprietary rights in any particular shoe color or shoe upper pattern. Welch Dec. Ex. L (August 3, 2020 Hearing Tr.) at 15:17-21.

**Plaintiff's Response:**  Disputed. During the hearing, Easy Spirit Counsel was referring to the fact that in this particular action, Easy Spirit is not claiming proprietary rights in a particular color or upper design on their own. Welch Dec. Ex. L (August 3, 2020 Hearing Tr.) at 15:17-16:7. However, it is possible that Easy Spirit may claim proprietary rights in an upper pattern or print for a shoe that is not at issue in this action.

**C.  The Design of the Traveltime Shoe**

13.     Easy Spirit claims that it and its predecessors in interest have continuously marketed the Traveltime shoe since 2005. Welch Dec. Ex. M (Easy Spirit's Amended Objections and Responses to Skechers' Second Set of Interrogatories, Interrogatory Response Nos. 11, 24).

**Plaintiff's Response:**  Undisputed.

14.     Plaintiff Easy Spirit LLC was formed in 2016 to acquire the trademark rights and certain other assets of the Easy Spirit business from Nine West Holdings. Compl., Dkt. 1 at ¶ 9; Welch Dec. Ex. N (Burris Depo. Tr.) at 274:14-281:4.

**Plaintiff's Response:**  Undisputed.

15.     Mr. Henry Besanceney, Easy Spirit's Design Director, considers the Easy Spirit Traveltime shoe as an athleisure shoe, a mule with no back, an EVA midsole with four dots, a shape, midsole design recesses and rubber outsole. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 30:9-15, 70:11-71:20; 87:15-18. When describing a shoe as a "Traveltime look-alike" or family member, Mr. Besanceney identified design elements on the upper that included the toe tip, the V

6

panel or gore on the side where the foot enters the shoe and the stitching across the vamp, or part of the shoe that covers the top of the foot. Mr. Besanceney described this Easy-Spirit produced shoe as a Traveltime look-alike or Traveltime family member even though the shoe was not on the Traveltime sole construction. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 205:19-206:17.

> **Plaintiff's Response:**  Disputed. The cited evidence does not support Defendants' assertions. Mr. Besanceney's discussion of the Traveltime family member is limited to the Easy Spirit Hotrace shoe (not any shoe), which is a "mule on a construction named the air flowing." Welch Dec. Ex. J (Besanceney Depo. Tr.) at 204:10-15. The Hotrace shoe is considered to be in the Traveltime family because the "air flowing" sole construction that uses the TRAVELTIME last, which is the shape that is used to make the shoe, the form. Saunders Decl. ¶ 5, Ex. 5 Besanceney Dep. Tr. at 129:11-18.

16.    Mr. DeZao described the Easy Spirit Traveltime shoe as an open-back slide with "a particular upper design," "upper side panel vents," "distinctive details on the midsole, on the outsole and on the way the shoe was constructed and put together." Welch Dec. Ex. K (DeZao Depo Tr.) at 50:6-51:17.

> **Plaintiff's Response:**  Disputed. Mr. DeZao also described other distinctive elements of the TRAVELTIME shoe that give rise to its distinctive design. Ex. 4, DeZao Dep. Tr. at 142:14-23; 169:21-207:2.

17.    As shown in the photos below of Easy Spirit's produced specimens, the Traveltime shoe bears the EASY SPIRIT house mark on the insole of the shoe and a cursive "e" logo on the bottom of the outsole. *See, e.g.*, Welch Dec. Ex. O.

 

**Plaintiff's Response:**  Undisputed

18.   The Traveltime shoe does not bear the TRAVELTIME word mark anywhere on the shoe. *See, e.g.*, *id.*

**Plaintiff's Response:**  Undisputed

19.   Easy Spirit's shoe designers look at and sometimes purchase competitor or other companies' shoes. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 87:19-88:15.

**Plaintiff's Response:**  Undisputed

20.   Easy Spirit uses competitor and other companies' shoes to gather information about trending colors, materials, and silhouettes when designing shoes and the upper concepts. Welch Dec. Ex. K (DeZao Depo. Tr.) at 124:3-127:6.

>   **Plaintiff's Response:**  Disputed. Easy Spirit works with a design studio in looking at trends occurring in the footwear market as a whole, including trending silhouettes. The cited testimony does not mention gathering information about trending colors and Mr. DeZao specifically states that Easy Spirit does not usually review the prints or fabric patterns of other shoes. Welch Dec. Ex. K (DeZao Depo. Tr.) at 124:3-127:6.

**D.  The Design of the Skechers Commute Time Shoe**

21.   Savva Teteriatnikov ("Mr. Teteriatnikov") is Vice President of Design at Skechers U.S.A., Inc. and designs sport shoes, casual shoes, men's and women's shoes, and

children's shoes. Welch Dec. Ex. B (Teteriatnikov Depo. Tr.) at 28:10-21; Declaration of Savva

Teteriatnikov ("Teteriatnikov Dec.") at ¶¶ 2, 4. Mr. Teteriatnikov has designed footwear for over

twenty years for such companies as Lugz, British Knights, Polo Ralph Lauren, Tommy Hilfiger,

and now Skechers. Teteriatnikov Dec. at ¶ 4.

> **Plaintiff's Response:** Undisputed

22.    Jessica Baruch ("Ms. Baruch") is Senior Director of Merchandising and Product

Development at Skechers U.S.A., Inc., and manages five product divisions for Skechers,

including Modern Comfort, Modern Comfort Sandals, Modern Comfort Boots, Cali, and Active.

Welch Dec. Ex. P (30(b)(6) Deposition Transcript of Skechers Designee Jessica Baruch

("Baruch Depo. Tr.")) at 17:13-14; 18:14-20; Baruch Dec. at ¶¶ 2, 4.

> **Plaintiff's Response:** Undisputed

23.    The average customer for Skechers Modern Comfort shoes, including the

Skechers Commute Time, is a younger, sophisticated woman, aged 40 to 60, who is interested in

stylish yet comfortable footwear. Baruch Dec. at ¶ 23. In Ms. Baruch's experience designing and

offering shoes for that market, and meeting and discussion shoes with Skechers' retail account

customers (like DSW and other national retailers), purchasers of Skechers Modern Comfort

shoes are discerning and thoughtful in making their purchase decisions. Baruch Dec. at ¶ 23.

> **Plaintiff's Response:** Undisputed that the average customer for Skechers Modern
>
> Comfort shoes is a woman, aged 40 to 60. Disputed as the remaining statements, which
>
> are not supported by the cited evidence. Ms. Baruch does not state in her declaration
>
> that the Skechers Modern Comfort shoes is for a "younger" demographic. Further, Ms.
>
> Baruch offers no data or evidence that "purchasers of Skechers Modern Comfort shoes
>
> are discerning and thoughtful in making their purchase decisions." Baruch Dec. at ¶ 23.

24.   With a retail price point of $35.00 to $60.00, Skechers Modern Comfort shoes are not inexpensive, and are not considered an impulse purchase by consumers. Baruch Dec. at ¶ 23.

**Plaintiff's Response:**  Disputed. The cited evidence does not support Defendants' assertion. Ms. Baruch offers no data or evidence that, "Skechers Modern Comfort shoes are not inexpensive, and are not considered an impulse purchase by consumers." Baruch Dec. at ¶ 23.

25.   In early 2017, Ms. Baruch made the decision to offer a new open-back shoe in the Modern Comfort division. Baruch Dec. at ¶ 6. Ms. Baruch wanted to launch a shoe inspired by the Skechers' D'Lite shoe, a popular line of shoes for Skechers, with various individual styles offered in different shoe divisions. Baruch Dec. at ¶ 6; Welch Dec. Ex. P (Baruch Depo. Tr.) at 48:6-49:13.

**Plaintiff's Response:**  Disputed. In order to design the referenced Commute Time shoe in Ms. Baruch's testimony, Skechers purchased an Easy Spirit TRAVELTIME shoe and sent it to its factory with instructions to construct its shoe with the "same exact" dimensions of the TRAVELTIME midsole and outsole. (Saunders Decl. ¶ 10, Ex. 6, Deposition Transcript of Savva Teteriatnikov ("Teteriatnikov Dep. Tr.") at 112:17-113:17; 117:24-118:25; 127:22-128:22; 136:22-138:6; 139:19-144:14; Saunders Decl. ¶ 11, Ex. 6A (Teteriatnikov Dep. Ex. 5) at SK0090078-80;  Saunders Decl. ¶ 12, Ex. 6B (Teteriatnikov Dep. Ex. 6) at SKNY0090017-19; Saunders Decl. ¶ 13, Ex. 6C (Teteriatnikov Dep. Ex. 7) at SKNY0090076-77; Saunders Decl. ¶ 14, Ex. 6D (Teteriatnikov Dep. Ex. 8) at SKNY0063258-61.) Further it is disputed whether the decision to offer a new open-back shoe in the Modern Comfort division was made by Ms. Baruch or Mr. Greenberg. Evidence shows that in March 2017, Mr. Greenberg had

a message sent to Ms. Baruch that he had an idea for a "Travel Time" competitive

version ("CV") that would be a slip on. Saunders Decl. ¶ 6, Ex. 3D at SKNY0099878.

In May 2017, Mr. Greenberg also had a message sent to Ms. Baruch that he wanted to

launch a new open back show that, "would give Travel Time a run for its money."

Saunders Decl. ¶ 17, Ex. 7 at SKNY0004194.

26.   Ms. Baruch wanted to tie the new Modern Comfort open-back to the Skechers

D'Lite, using features like the D'Lite "chicklets" – small inserts in the shoe's midsole – to help

promote the new shoe as a Skechers offering. Baruch Dec. at ¶ 7; Welch Dec. Ex. P (Baruch

Depo. Tr.) at 48:6-49:13.

> **Plaintiff's Response:**  Disputed. Skechers sought to design the Commute Time shoe to
>
> come as close as possible to the overall appearance of the TRAVELTIME shoe. *See*
>
> Response to SF ¶ 25.

27.   Mr. Teteriatnikov was the lead designer for the shoe that became the Skechers

Commute. Welch Dec. Ex. B (Teteriatnikov Depo. Tr.) at 98:16-18; 46:4-16. He designed the

shoe sole (the hard, bottom of the shoe) and an initial upper (the cloth or other material on top of

a shoe) for the Skechers Commute. Welch Dec. Ex. B (Teteriatnikov Depo. Tr.) at 103:21-107:6;

Teteriatnikov Dec. at ¶¶ 5-6.

> **Plaintiff's Response:**  Undisputed.

28.   Based on his discussions with Ms. Baruch, Mr. Teteriatnikov designed the outsole

and midsole that became the Skechers Commute shoe as a Spring offering for the women's

Modern Comfort line. Welch Dec. Ex. B (Teteriatnikov Depo. Tr.) at 98:19-99:23; 101:8-

102:19; Teteriatnikov Dec. at ¶¶ 5-8.

> **Plaintiff's Response:**  Undisputed.

29.     Mr. Teteriatnikov purposefully included the Skechers D'Lite "chicklets" design element on the side of the outsole that became the Skechers Commute Time shoe so as to specifically associate the Skechers Commute Time with other Skechers footwear. Welch Dec. Ex. B (Teteriatnikov Depo. Tr.) at 96:18-24; 165:12-166:18; Teteriatnikov Dec. at ¶¶ 14, 22.

> **Plaintiff's Response:**  Disputed. Skechers sought to design the Commute Time shoe to come as close as possible to the overall appearance of the TRAVELTIME shoe. *See* Response to SF ¶ 25.

30.     Mr. Teteriatnikov was also inspired by historic Skechers shoes, many open back, such as the Synergy, Biker, Reggae Fest, Easy Living, Easy Going, Noogies, D'Lite, Energy, and Prequel. Welch Dec. Ex. B (Teteriatnikov Depo. Tr.) at 101:11-103:15; 104:7-19; 125:10-21; 235:2-12; 240:12-22; 243:10-244:9; 245:3-18; Teteriatnikov Dec. at ¶¶ 9-24.

> **Plaintiff's Response:**  Disputed. Skechers sought to design the Commute Time shoe to come as close as possible to the overall appearance of the TRAVELTIME shoe. *See* Response to SF ¶ 25.

31.     In designing the outsole and midsole for the shoe that would later become the Skechers Commute, Mr. Teteriatnikov was inspired by numerous previous third-party shoes, including a shoe he designed for Tommy Hilfiger in 2002. Teteriatnikov Dec. at ¶¶ 10-12, 15; Welch Dec. Ex. Q; Welch Dec. Ex. R.

> **Plaintiff's Response:**  Disputed. Skechers sought to design the Commute Time shoe to come as close as possible to the overall appearance of the TRAVELTIME shoe. *See* Response to SF ¶ 25.

32.     Based on these inspirations, Mr. Teteriatnikov finalized the design of an athleisure outsole and midsole featuring a mid-height profile, a toe bumper, and stylized lines on the side. Teteriatnikov Dec. ¶¶ 10-13; Welch Dec. Ex. DK.

> **Plaintiff's Response:**  Disputed. Skechers sought to design the Commute Time shoe to come as close as possible to the overall appearance of the TRAVELTIME shoe. *See* Response to SF ¶ 25.

33.     Skechers offers shoes of three differing sole heights within the Modern Comfort division: a thicker sole, a thinner sole, and an in-between sole. Teteriatnikov Dec. at ¶ 9; Welch Dec. Ex. B (Teteriatnikov Depo. Tr.) at 101:8-103:15. Mr. Teteriatnikov intended the sole that became the Skechers Commute to be an in-between height, given thicker and thinner open-back shoes already in the Modern Comfort division. Teteriatnikov Dec. at ¶ 9; Welch Dec. Ex. B (Teteriatnikov Depo. Tr.) at 101:8-103:15.

> **Plaintiff's Response:**  Disputed. Skechers sought to design the Commute Time shoe to come as close as possible to the overall appearance of the TRAVELTIME shoe. *See* Response to SF ¶ 25.

34.     Mr. Teteriatnikov reviewed a Traveltime shoe that was in the Skechers office as a reference of a mid-height athletic shoe. Welch Dec. Ex. B (Teteriatnikov Depo. Tr.) at 171:1-173:5; Teteriatnikov Dec. at ¶ 13. Rather than provide measurements in his communications with Skechers' manufacturing partners in China, he sent along the Traveltime shoe so it could be measured on site for outsole width and midsole height measurements. Welch Dec. Ex. B (Teteriatnikov Depo. Tr.) at 171:1-173:5. Sending along this store-bought reference shoe saved Mr. Teteriatnikov time in his initial design process because the team in China could take the measurements that he could not as easily take. Teteriatnikov Dec. at ¶ 13.

**Plaintiff's Response:**  Disputed. Mr. Teteriatnikov did not simply use the TRAVELTIME shoe as a reference and to save time. Skechers sought to design the Commute Time shoe to come as close as possible to the overall appearance of the TRAVELTIME shoe. *See* Response to SF ¶ 25.

35.    Mr. Teteriatnikov had already finalized his initial outsole designs for the sole that became the Skechers Commute prior to sending the Easy Spirit Traveltime shoe to China. Teteriatnikov Dec. at ¶ 13.

**Plaintiff's Response:**  Disputed. Mr. Teteriatnikov testified that he was in the process of designing the Commute Time outsole during the time he sent the TRAVELTIME shoe to the factory in China. Ex. 6, Teteriatnikov Dep. Tr. at 143:15-144:14.

36.    Neither the outsole widths nor midsole height measurements are elements of Easy Spirit's claimed Traveltime trade dress. Compl., Dkt. 1 at ¶ 21.

**Plaintiff's Response:**  Disputed. Easy Spirit claims trade dress protection in the combination of outsole, midsole and upper elements, as well as the overall design of the TRAVELTIME shoe. The shape and size of the outsole and midsole contributes to the protectable elements that contribute to the overall design of the TRAVELTIME shoe. *See* Response to ¶ 8.

37.    The Skechers Commute Time has a y-shaped strip of fabric, which can also be called a "yoke", on the center of the shoe's upper, printed detailing on the toe cap and along the side of the shoe, a diagonal distinct stitching pattern on the top of the upper, and no stretchy panels on the sides of the upper where the foot enters the shoe. Welch Dec. Ex. S. Exemplary images from these exhibits are depicted below at Paragraph 40.

**Plaintiff's Response:**  Disputed. The Skechers Commute Time Rideshare shoe does not have a strip of fabric running down the center of the shoe's upper, as shown below, but similarly copies a shoe in the Easy Spirit TRAVELTIME shoe family. *See* Complaint ¶ 27; Saunders Decl. ¶ 18, Ex. 8, Deposition Transcript of Jessica ("Baruch Dep. Tr.") at 174:4-15, 176:4-13; Saunders Decl. ¶ 27, Ex. 8I (Baruch Dep. Ex. 24); *see also* Counter-SF ¶ 315 for an image of the Commute Time Rideshare shoe.



38.    The midsole "chicklets" on the Skechers Commute Time are similar to the midsole "chicklets" on the Skechers D'Lite. Welch Dec. Ex. T; Teteriatnikov Dec. at ¶ 14. The toe bumper on the outsole of the Skechers Commute Time is similar to the toe bumper on the Skechers D'Lite. Welch Dec. Ex. T; Teteriatnikov Dec. at ¶ 14. The center fabric strip, also known as the yoke, has a similar y-shape on the Skechers Commute Time as the yoke on the Skechers D'Lite. Welch Dec. Ex. T; Teteriatnikov Dec. at ¶ 13.



Image retrieved from Exhibit T to the Welch Dec., lines in the original.

**Plaintiff's Response:**  Disputed. The overall designs of the two referenced shoes are completely different. It is inadequate to compare discrete elements of each shoe without consideration of the overall design of each shoe. *See generally*, Ex. 4, DeZao  Dep. Tr. at 169:21-207:2 (comparing the TRAVELTIME shoe with several third-party shoes and describing how the shoes can share similar elements but still maintain completely different designs for the upper, midsole, or outsole that contribute to a completely different overall design impression).

16

39.    In designing the outsole, midsole, and upper that became the Skechers Commute Time, Mr. Teteriatnikov intended to create a Skechers design with consistent design elements and the "DNA" of a Skechers shoe, and Mr. Teteriatnikov did not intend to create a shoe that was similar to the design of the Easy Spirit Traveltime. Teteriatnikov Dec. at ¶ 25.

> **Plaintiff's Response:**  Disputed. Skechers sought to design the Commute Time shoe to come as close as possible to the overall appearance of the TRAVELTIME shoe. *See* Response to SF ¶ 25.

40.    The Skechers Commute Time shoe features the SKECHERS house brand repeatedly on the shoe, including printed on the top of the outsole, the heel, the outer side of the upper, and on the sock bed. *See, e.g.* Welch Dec. Ex. S (SKNY-SP001 3, SKNY-SP001 4, SKNY-SP001 6, SKNY-SP001 7) (depicted below); Baruch Dec. at ¶¶ 18-19. While all Skechers Commute Time shoes feature the SKECHERS mark at least once, and as many as three times (displayed below), some designs, such as the Skechers Commute Time Rideshare, do not bear the SKECHERS mark in all three possible areas. Baruch Dec. at ¶¶ 18-19. The Skechers Commute Time also has an "S" logo printed on the bottom of the outsole. Baruch Dec. at ¶¶ 18-19.



 



**Plaintiff's Response:**  Disputed. Skechers is not consistent about placing its house

brand on the Commute Time shoe.  For example, the Skechers Commute Time Snow

Escape shoe copies the overall design of the Easy Spirit TRAVELTIME counterpart

and does not have the house brand on the sock bed or on the top of the upper. *See*

Saunders Decl. ¶ 31, Ex. 8M (Baruch Dep. Ex. 30); *see also*, Counter-SF ¶ 321 for an

image of the Commute Time Snow Escape shoe and the TRAVELTIME counterpart.

41.    Skechers purposefully did not put the COMMUTE or COMMUTE TIME name or

mark on the shoe because Skechers wanted the shoe to be placed and promoted as part of the

Skechers family of footwear. Baruch Dec. at ¶ 18.

> **Plaintiff's Response:** Disputed. Skechers sought to design the Commute Time shoe to come as close as possible to the overall appearance of the TRAVELTIME shoe. *See* Response to SF ¶ 25.

42.   KariAnne Spear ("Ms. Spear") is a senior colorist and material developer for Skechers. Welch Dec. Ex. D (Spear Depo. Tr.) at 18:2-10. Ms. Spear designed shoe uppers and selected materials and patterns for Skechers Commute and Skechers Commute Time shoes. *Id.* at 35:12-18.

> **Plaintiff's Response:** Undisputed.

43.   Skechers' shoe designs are developed via several resources, including shopping the market, looking at trend resources such as WGSN, and seeing what consumers are wearing. Welch Dec. Ex. D (Spear Depo. Tr.) at 19:4-18; 133:16-134:17. Skechers' designers develop upper material ideas based on market trends. *Id.* at 18:14-19:18. Skechers' Commute Time shoes are designed using the same process as every other Skechers shoe. *Id.* at 38:22-39:3.

> **Plaintiff's Response:** Disputed. Skechers sought to design the Commute Time shoe to come as close as possible to the overall appearance of the TRAVELTIME shoe. *See* Response to SF ¶ 25.

44.   Ms. Spear did not consult any Easy Spirit Traveltime shoes before designing any Skechers Commute Time shoe uppers that were sold. Welch Dec. Ex. D (Spear Depo. Tr.) at 46:23-48:18; 203:21-204:10.

> **Plaintiff's Response:** Disputed. During Ms. Baruch's deposition, she was asked if Skechers created upper designs for Commute Time that mimicked the TRAVELTIME uppers, and she testified that, "we were inspired by some of their uppers maybe on certain items, certain styles." Ex. 8, Baruch Dep. Tr. at 165:17-167:2. Further, in

December 2017, Ms. Baruch and Mr. Sadis were provided with images of

TRAVELTIME shoes with a list of successful prints and materials that were sold at

Bealls department store. Ex. Ms. Baruch and Mr. Sadis did not testify that this

information was not shared with Ms. Spear. *See* Ex. 9A.

### E.  The COMMUTE TIME Name Selection

45.    Melissa Hobbs ("Ms. Hobbs") was a senior product manager for Skechers and

was typically the person in charge of assigning style names for the Modern Comfort line of

shoes. Welch Dec. Ex. A (Hobbs Depo. Tr.) at 15:16-22; 23:4-21; 38:21-39:14. Ms. Hobbs

reported to Ms. Baruch until early 2020. Baruch Dec. at ¶ 8.

> **Plaintiff's Response:**  Undisputed to the extent that Ms.

46.    Ms. Hobbs originally came up with the name "Commute" for what is now the

Skechers Commute Time shoe. Welch Dec. Ex. A (Hobbs Depo. Tr.) at 56:21-61:3.

> **Plaintiff's Response:**  Undisputed.

47.    The name "Commute" was chosen to connect the new shoe to Skechers' existing

popular styles in the Modern Comfort line of shoes with walking themed names, such as the

Pedestrian and Biker. Welch Dec. Ex. A (Hobbs Depo. Tr.) at 56:21-61:3.

> **Plaintiff's Response:**  Disputed. Skechers sought to design the Commute Time shoe to
>
> come as close as possible to the TRAVELTIME shoe, including choosing a name for
>
> the shoe that is close in meaning and connotation to the "TRAVEL" component of the
>
> TRAVELTIME shoe name. *See* Response to SF ¶ 25.

48.    Ms. Hobbs' regular name process involves her, or members of her team, checking

for prior Skechers shoes already using the name and checking trademark databases for prior

relevant registrations using the name. She chose the "Commute" name using this regular process. Welch Dec. Ex. A (Hobbs Depo Tr.) at 39:15-41:16; 110:12-17; 199:9-202:13; 58:4-60:24.

    **Plaintiff's Response:**  Undisputed.

49.    Ms. Baruch approved the use of the name Commute for the shoe that is now the Skechers Commute Time. Baruch Dec. at ¶ 8. When approving that name, Ms. Baruch was not thinking of Easy Spirit's Traveltime name, and she did not approve the name Commute based on anything to do with Easy Spirit. Baruch Dec. at ¶ 8.

    **Plaintiff's Response:**  Disputed. Skechers sought to design the Commute Time shoe to come as close as possible to the TRAVELTIME shoe, including choosing a name for the shoe that is close in meaning and connotation to the "TRAVEL" component of the TRAVELTIME shoe name. *See* Response to SF ¶ 25.

50.    The name of the shoe was changed from "Commute" to "Commute Time" in September 2018. Welch Dec. Ex. A (Hobbs Depo. Tr.) at 199:3-6; Welch Dec. Ex. F; Welch Dec. Ex. G.

    **Plaintiff's Response:**  Undisputed.

51.    Prior to that change, Ms. Hobbs and her sample coordinator Nick Salita sent the "Commute," "Commute Time," and another option, "Commuters," to Skechers legal for approval. Baruch Dec. at ¶ 11; Welch Dec. Ex. A (Hobbs Deposition Errata Sheet (March 11, 2020)) at 232:6-9; Welch Dec. Ex. U.

    **Plaintiff's Response:**  Disputed. Ms. Hobbs' original testimony is contradictory to her now changed testimony. Ms. Hobbs originally testified that she, alone, selected the name and would have searched the trademark website to determine if it was available for use. (Saunders Decl. ¶ 33, Ex. 10, Deposition Transcript of Melissa Hobbs ("Hobbs

21

Dep. Tr.") at 39:11-41:16; 56:21-57:2, 110:14.) With regard to COMMUTE TIME, Ms.

Hobbs testified that she probably checked the trademark website to determine

availability as well. (*Id.* at 199:9-16; 202:2-13.) Ms. Hobbs further testified that she

could think of only one occasion in which she previously consulted legal regarding a

style name, which concerned an unrelated product. (*Id.* at Hobbs Dep. Tr. at 42:5-24.)

Evidence also shows that Mr. Greenberg directed and approved the name change. In

September 2018, Ms. Hobbs notified a member of the Skechers team about Mr.

Greenberg's decision: "[RG] wants to go with COMMUTE TIME now." (Saunders

Decl. ¶ 4, Ex. 3B (Greenberg Dep. Ex. 2) at SKNY0045202.) Again, on September 20,

2018, another member of the Skechers team confirmed Mr. Greenberg's decision to

Ms. Hobbs: "Robert has confirmed he wants to proceed with changing the name to

'COMMUTE TIME' and creating a new box for this program." (Saunders Decl. ¶ 5,

Ex. 3C (Greenberg Dep. Ex. 3) at SKNY0131153.)

52.    There is a live trademark registration in International Class 25 for the mark

COMMUTERS, held by Levi Strauss & Co., Reg. No. 4,595,283. Welch Dec. Ex. V.

   **Plaintiff's Response:**  Undisputed. The referenced registration only covers jackets,

   jeans, pants and shorts and not any footwear. Welch Dec. Ex. V.

**F.  Skechers' Use of the COMMUTE and COMMUTE TIME Marks**

53.    Skechers Commute shoe styles were, and Skechers Commute Time shoe styles

are, sold in boxes that prominently feature the house brand, "Skechers," and the SKECHERS

trademark. *See, e.g.* Welch Dec. Ex. S (SKNY-SP001); Baruch Dec. at ¶ 11.

   **Plaintiff's Response:**  Disputed. The cited evidence does not support Defendants'

   assertion. Ms. Baruch's declaration states that the referenced shoe box shown in Ex. S

and in paragraph 12 (not ¶ 11) of her declaration is used for "many" of the Skechers Commute Time shoes, but does not provide images of the other shoe boxes used for Skechers Commute Time shoes. In addition, Skechers does not provide quantitative information regarding how many Skechers Commute Time shoes the referenced shoe box is used for and volume of sales relative to the shoe boxes that do not use the referenced shoe box. Baruch Dec. at ¶ 12. Further, the most prominent elements of the referenced shoe box is the image of the person and list of features that support its casual and comfortable qualities. *Id*. at ¶ 13. Significantly, Skechers' new shoe box displays the COMMUTE TIME mark more prominently than the house brand and mimics the circular logo of Easy Spirit's TRAVELTIME brand. As shown below, Skechers also created an ad (with the same circular logo on the new Commute Time packaging) that mimics Easy Spirit's ad:

| Easy Spirit | Skechers |
|---|---|



(Saunders Decl. ¶ 34, Ex. 10 at SKNY0008555; Saunders Decl. ¶ 35, Ex. 11 at SKNY0000015.)

54.    Prior to June 25, 2019, the boxes only use the mark COMMUTE TIME or

COMMUTE once, to designate the style name on the UPC label identifying the shoe information

on the side of the box, underneath a top flap prominently featuring the trademark SKECHERS.

Welch Dec. Ex. A (Hobbs Depo. Tr.) at 38:12-20; 75:3-6. *See, e.g.* Welch Dec. Ex. S. Baruch

Dec. at ¶¶ 12-13.

> **Plaintiff's Response:**  Disputed. The cited evidence does not support Defendants'
>
> assertion. Ms. Baruch's declaration states that the referenced shoe box shown in Ex. S
>
> and in paragraph 12 (not ¶ 11) of her declaration is used for "many" of the Skechers
>
> Commute Time shoes, but does not provide images of the other shoe boxes used for
>
> Skechers Commute Time shoes. In addition, Skechers does not provide quantitative

information regarding how many Skechers Commute Time shoes the referenced shoe box is used for and volume of sales relative to the shoe boxes that do not use the referenced shoe box. Baruch Dec. at ¶ 12.

55.    Since June 25, 2019, a select few, newer styles of the Skechers Commute Time shoes ship in new boxes, which prominently feature the Skechers trademark above the Commute Time style name. Baruch Dec. at ¶ 13. Welch Dec. Ex. I.

>    **Plaintiff's Response:**  Disputed. Skechers' new shoe box displays the COMMUTE TIME mark more prominently than the house brand and mimics the circular logo of Easy Spirit's TRAVELTIME brand. As shown in the Response to ¶ 53, Skechers also created an ad (with the same circular logo on the new Commute Time packaging) that mimics Easy Spirit's ad. (Ex. 10 at SKNY0008555; Ex. 11 at SKNY0000015.)

56.    Skechers does not market or advertise the Skechers Commute Time shoe. Welch Dec. Ex. P (Baruch Depo. Tr.) at 151:2-152:8; Baruch Dec. at ¶ 21.

>    **Plaintiff's Response:**  Disputed. The COMMUTE TIME shoe was included in a list of "key initiatives" for the Modern Comfort line, which is a company designation for a specific shoe that it wants to sell and believes will sell well. Ms. Baruch also testified the "key initiatives" are "the styles they select that they are going to try and go out and sell to accounts." (Ex. 8, Baruch Dep. Tr. at 160:7-165:25; Ex. 9C at SKNY0014714, SKNY0014723-25, SKNY0014731-33, SKNY0014755, SKNY0014758.)

57.    This is because Skechers does not consider the shoe to be a big seller in its Modern Comfort line. Welch Dec. Ex. P (Baruch Depo. Tr.) at 151:2-152:8. The Skechers Commute Time shoe has been relatively unimportant for Skechers. Baruch Dec. at ¶ 21.

**Plaintiff's Response:** Disputed. The COMMUTE TIME shoe was considered by Skechers to be important. Several styles of the COMMUTE TIME shoe were selected by Skechers as "key initiatives" – a company designation for a specific shoe that it wants to sell and believes will sell well. (Ex. 9, Baruch Dep. Tr. at 160:7-165:25; Ex. 9C at SKNY0014714, SKNY0014723-25, SKNY0014731-33, SKNY0014755, SKNY0014758.) Further, the COMMUTE TIME shoe was important enough for the Skechers CEO to change the name of the shoe from COMMUTE to COMMUTE TIME – Ms. Hobbs testified that Mr. Greenberg usually engages in the process of approving style names only for some important new shoes. Ex. 9, Hobbs Dep. Tr. at 102:20-103:16; *see also*, Response to ¶ 51 (evidence that Dr. Greenberg directed and approved the name change after the COMMUTE shoe had already been shipped to customers.)

58.    Skechers does not use the Skechers COMMUTE or Skechers COMMUTE TIME name, beyond displaying it on the shoebox, when offering the shoes for sale in Skechers retail stores. Baruch Dec. at ¶ 14. The box is the only place that a customer at a Skechers retail store would see the Skechers Commute or Skechers Commute Time mark, and in some contexts, this would occur only after the shoe is purchased. Baruch Dec. at ¶ 14.

**Plaintiff's Response:** Disputed. Ms. Baruch's declaration does not provide sufficient evidence or support that customers do not encounter more instances of the COMMUTE TIME name in Skechers retain stores. Baruch Dec. at ¶ 14.

59.    Skechers is unaware of any use of the SKECHERS COMMUTE or SKECHERS COMMUTE TIME name by third-party retailers, such as DSW and Macy's, at the point-of-sale or on the store shelf. Baruch Dec. at ¶ 16. Skechers is unaware of any point-of-sale advertising

for the Skechers Commute Time shoe by third-party retailers, beyond what is available on their eCommerce pages. Baruch Dec. at ¶¶ 16-17.

**Plaintiff's Response:**  Disputed. Ms. Baruch's declaration does not provide sufficient evidence or support for the assertions made in SF ¶ 59. Baruch Dec. at ¶¶ 16-17.

60.   When offered on skechers.com, Skechers' eCommerce website, the Skechers Commute and Skechers Commute time are sold under the heading banner reading SKECHERS. Welch Dec. Ex. W; Baruch Dec. at ¶ 15.

**Plaintiff's Response:**  Undisputed.

61.   Many of Skechers' wholesale customers also use the famous SKECHERS mark in conjunction with the COMMUTE and COMMUTE TIME marks when offering the shoes for sale via their own respective eCommerce websites, including Kohls.com, DSW.com, QVC.com, Shoesensation.com, Amazon.com, Zappos.com, and Bealls.com. Welch Dec. Ex. X; Welch Dec. Ex. Y; Welch Dec. Ex. Z; Welch Dec. Ex. AA; Baruch Dec. at ¶ 17.

**Plaintiff's Response:**  Undisputed.

62.   Certain third-party retailers continue to use the Skechers Commute name and mark for the relevant shoe, despite the name change. Baruch Dec. at ¶ 17.

**Plaintiff's Response:**  Disputed. Ms. Baruch's declaration does not provide sufficient evidence or support that certain third-party retailers continue to use the COMMUTE name for the relevant shoe. Baruch Dec. at ¶ 17.

63.   The Skechers Commute enjoys a similar feedback to other Skechers shoes. Welch Dec. Ex. AB (Deposition Transcript of Timothy Lakin ("Lakin Depo. Tr.")) at 20:22-21:24; 40:18-42:2. Skechers shoes enjoy a roughly 95% positive customer satisfaction review rating. Welch Dec. Ex. AB (Lakin Depo. Tr.) at 20:22-21:24.

**Plaintiff's Response:**  Disputed. Mr. Lakin's testimony does not provide sufficient evidence or support for the assertions made in SF ¶ 63. Welch Dec. Ex. AB Lakin Dep. Tr. at 20:22-21:24; 40:18-42:2; 20:22-21:24. Mr. Lakin does not provide any quantitative data regarding how much volume of feedback Skechers receives about the Commute Time shoe in relation to other Skechers shoes. Mr. Lakin alos does not provide any data regarding what portion of the alleged 95% positive customer satisfaction review rating consists of reviewed about the commute time shoe. For example, reviews of the Skechers Commute Time Rideshare shoe only has 3.5 stars (or 70%) positive customer satisfaction review rating on Amazon.com. (Saunders Decl. ¶ 36; Ex. 12.)

## G.  Skechers' History of Casual Open-Backs

64.    Skechers launched open-back athleisure shoes such as the Skechers Kozmiks, Skechers Energy, and Skechers Noogies styles, and many others, from at least 1999-2012. Welch Dec. Ex. AC (*e.g.*, Style No. 2581, the Skechers Sport Toledo Halfback, which first shipped on March 2, 2000 and sold 5,520 pairs, Style No. 5013, Skechers Sport Tectonics Tremor, which first shipped on January 28, 2000 and sold 53,435 pairs, Style No. 5093, the Skechers Sport Gators Outback, which first shipped on April 16, 2001 and sold 19,908 pairs, Style No. 5016, the Skechers Sport Tectonics, which first shipped on October 26, 2000 and sold 7,235 pairs, Style No. 1901, the Skechers Sport Gators, which first shipped on August 30, 2001 and sold 29,403 pairs, the Skechers Sport Playmates, Style No. 2451, which first shipped on November 10, 2000 and sold 84,975 pairs, the Skechers Sport Kozmiks Crater, Style No. 2665, which first shipped on December 8, 2000 and sold 149,364 pairs, and the Skechers Flex Fit Slam Dunk, Style No. 11664, which first shipped on May 4, 2012 and sold 39,891 pairs); Compl., Dkt. 1 at ¶ 10;

Declaration of Neil Sadis ("Sadis Dec.") at ¶¶ 7-15, 23, 46; Welch Dec. Exs. DD, DE DF, DG
(Skechers catalogs).

> **Plaintiff's Response:**  Undisputed.

65.    From 1999 to 2012, Skechers introduced for sale at least 40 new styles of
backless, athleisure shoes with rubber toes, swirl-style midsoles, elevated arches in the
outsole/midsoles, line-like detailing elements on the midsoles, and design detailing in the
midsole at or near the heel, which sold more than 5,000,000 pairs. Sadis Dec. at ¶¶ 6-48; *see also*
Welch Dec. Ex. AC.

> **Plaintiff's Response:**  Undisputed that between 1999 and 2012 Skechers likely
> introduced several styles of backless shoes. Disputed that the referenced Skechers shoes
> share the same combination of elements or overall design as the TRAVELTIME shoe.
> Sadis Dec. at ¶¶ 6-48. *See generally*, Ex. 4, DeZao  Dep. Tr. at 169:21-207:2
> (comparing the TRAVELTIME shoe with several third-party shoes and describing how
> the shoes can share similar elements but still maintain completely different designs for
> the upper, midsole, or outsole that contribute to a completely different overall design
> impression)

66.    Easy Spirit's 30(b)(6) witness and Design Director Mr. Besanceney admitted that
several Skechers shoes predating the Skechers Commute Time possessed the claimed Traveltime
trade dress elements, including Skechers' Kozmiks, Achilles, Energy, Tattle Tales, and Noogies.
Welch Dec. Ex. J (Besanceney Depo. Tr.) at 145:20-192:9-11.

> **Plaintiff's Response:**  Disputed. Mr. Besanceney was not asked whether the referenced
> Skechers shoes possess a combination of the specific trade dress elements possessed by
> the TRAVELTIME shoe but was instead, asked about general categories of elements

without tying them back to the overall design and commercial impression of the TRAVELTIME shoe design. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 145:20-192:9-11. Accordingly, Mr. Besanceney's responses are irrelevant to the TRAVELTIME trade dress. For example, *see* Responses to SF ¶¶ 9-11. The overall designs of the referenced shoes are completely different than the overall design of the TRAVELTIME shoe. It is inadequate to compare discrete elements of each shoe without consideration of the overall design of each shoe. *See generally*, Ex. 4, DeZao Dep. Tr. at 169:21-207:2 (comparing the TRAVELTIME shoe with several third-party shoes and describing how the shoes can share similar elements but still maintain completely different designs for the upper, midsole, or outsole that contribute to a completely different overall design impression). There are infinite ways to design a comfort slip-on shoe without appropriating the overall design of the TRAVELTIME shoe. All of the non-Commute Time shoes presented by Skechers in support of its summary judgment motion evidence that there have been numerous styles of Skechers that competed fairly in the market by incorporating design elements that do not copy the overall design of the TRAVELTIME shoe. The referenced Skechers shoes further demonstrate there was no legitimate need to copy the TRAVELTIME midsole/outsole and uppers, as well selecting a name that is confusingly similar to TRAVELTIME in order to fairly compete in the slip-on comfort shoe category.

67.    Mr. Besanceney admitted that the Skechers Sport Kozmiks Meteor – which was featured in a Skechers catalog from Spring 2000, before the Traveltime was released – has all of the claimed Traveltime trade dress elements, including: (1) an open-back; (2) a swirl midsole shape and a midsole that widens as it flows from the toe cap to the heel; (3) an indented line

along the midsole from the front to the heel and another indented line on the rear of the shoe; (4)

a contoured midsole and outsole with an arch that creates an open area between the outsole and

heel; (5) a rubber outsole extending up from the bottom of the shoe to the front of the shoe to

form a bumper; and (6) design elements on the heel. Welch Dec. Ex. J (Besanceney Depo. Tr.) at

145:20-149:22; 151:17-25; Compl., Dkt. 1 at ¶ 10. The Skechers Sport Kozmiks Meteor is

pictured below from Welch Dec. Ex. CY (at SKNY0092706).



  **Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

  68. Mr. Besanceney admitted the Skechers Sport Kozmiks Meteor possessed a swirl

midsole shape similar to the Traveltime shoe because that element is "typical" of athletic shoes

(and of some athleisure shoes) and "any shoe" with a similar midsole and rubber bottom will

"naturally have a tapered toe" and naturally have a flow up to a higher point in the arch. Welch

Dec. Ex. J (Besanceney Depo. Tr.) at 148:6-149:5. The Skechers Sport Kozmiks Meteor, Style

No. 2578 was first shipped on December 7, 1999, and Skechers sold a total of 52,136 pairs. Sadis

Dec. at ¶ 9; Welch Dec. Ex. AC.

  **Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

  69. Mr. Besanceney admitted that the Skechers Sport Kozmiks Heaven – which was

featured in a Skechers catalog from Spring 2000, four years before the Traveltime was released –

has all of the claimed Traveltime trade dress elements, including: (1) a slip-on, clog-style; (2) a "swirl" midsole that runs from the base of the toe cap and widens as it flows to the heel; (3) an indented curved line along the midsole from the front to the heel and another line on the rear of the shoe; (4) a combined contoured midsole and outsole with an arch that creates an open area between the outsole and heel; (5) a rubber outsole extending up from the bottom of the shoe to the front of the shoe to form a bumper; and (6) a design element on the heel segment. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 149:23-151:25; Compl., Dkt. 1 at ¶ 10. The Skechers Sport Kozmiks Heaven is pictured below from Welch Dec. Ex. CY (at SKNY0092707).



SKECH-ITC00006736

SKNY0092707

**Plaintiff's Response:** Disputed. *See* Response to SF ¶ 66.

70.    Mr. Besanceney admitted that the swirled midsole featured on the Skechers Sport Kozmiks Heaven is "typical" of athletic shoes and many athleisure shoes. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 150:11-16.

**Plaintiff's Response:** Disputed. *See* Response to SF ¶ 66.

32

71.    Mr. Besanceney admitted that the Skechers Sport Kozmiks Heaven and the Traveltime both possess a stripe or "yoke" down the top of the upper. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 151:11-16.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

72.    The Skechers Sport Kozmiks Heaven, Style No. 2612 was first shipped on February 24, 2000, and Skechers sold a total of 38,713 pairs. Sadis Dec. at ¶ 10; Welch Dec. Ex. AC.

**Plaintiff's Response:**  Undisputed.

73.    Mr. Besanceney admitted that the Skechers Sport Achilles Full Rhodes – which was featured in a Skechers catalog from Fall 2002, two years before the Traveltime was released – has all of the claimed Traveltime trade dress elements, including:  (1) a slip-on, clog-style upper; (2) a "swirl" midsole that runs from the base of the toe cap and widens as it flows to the heel; (3) an indented curved line along the heel; (4) a contoured midsole and outsole with an arch that creates an open area between the outsole and heel; (5) a rubber outsole extending up from the bottom of the shoe to the front of the shoe to form a bumper; and (6) a design element on the heel segment. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 152:9-17; 153:8-154:21; Compl., Dkt. 1 at ¶ 10. Skechers Achilles Full Rhodes, Style No. 5129, is pictured below from Exhibit AD to the Welch Dec. (at SKNY0094900).



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

74.  The Skechers Sport Achilles Full Rhodes, Style No. 5129, was first shipped on
January 7, 2002, and Skechers sold a total of 1,506 pairs. Sadis Dec. at ¶ 16; Welch Dec. Ex.
AC.

**Plaintiff's Response:**  Undisputed.

75.  Mr. Besanceney admitted that the swirl midsole featured on the Skechers Sport
Achilles Full Rhodes is "typical" of athletic shoes and athleisure shoes. Welch Dec. Ex. J
(Besanceney Depo. Tr.) at 153:19-24.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

76.  Mr. Besanceney admitted that the Skechers Sport Achilles Rhodes – which was
featured in a Skechers catalog from Fall 2002, two years before the Traveltime was released –
has all of the claimed Traveltime trade dress elements, including: (1) a slip-on, clog-style upper;
(2) a "swirl" midsole that runs from the base of the toe cap and widens as it flows to the heel; (3)
an indented curved line along the heel; (4) a combined contoured midsole and outsole with an
arch that creates an open area between the outsole and heel; (5) a rubber outsole extending up
from the bottom of the shoe to the front of the shoe to form a bumper; and (6) a design element
on the heel segment. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 154:22-156:10; Compl., Dkt. 1
at ¶ 10. Skechers Sport Achilles Rhodes, Style No. 5056, is pictured below from Exhibit AD to
the Welch Dec. (at SKNY0094902).



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

77.   The Skechers Sport Achilles Rhodes, Style No. 5056, was first shipped on November 27, 2000, and Skechers sold a total of 25,953 pairs. Sadis Dec. at ¶ 17; Welch Dec. Ex. AC.

**Plaintiff's Response:**  Undisputed.

78.   Mr. Besanceney admitted that the swirl midsole featured on the Skechers Sport Achilles Rhodes is "typical" of athletic shoes and many athleisure shoes. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 155:11-16.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

79.   Mr. Besanceney admitted that the Skechers Sport Achilles Rhodes and the Traveltime both possess a stripe or yoke down the top of the upper. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 151:11-16; 156:11-13.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

80.   Mr. Besanceney admitted that the Skechers Sport Energy 2 Vibes – which was featured in a Skechers catalog from Fall 2002, two years before the Traveltime was released – has all of the claimed Traveltime trade dress elements, including: (1) a slip-on, clog-style upper; (2) a "swirl" midsole that runs from the base of the toe cap and widens as it flows to the heel; (3) an indented curved line along the midsole from the front to the heel and another indented line on the rear of the shoe; (4) a combined contoured midsole and outsole with an arch that creates an open area between the outsole and heel; (5) a rubber outsole extending up from the bottom of the shoe to the front of the shoe to form a bumper; and (6) design elements on the heel segment. Welch Dec. Ex. J (Besanceney Depo. Tr.) 156:14-157:19; Compl., Dkt. 1 at ¶ 10. Skechers Sport

Energy 2 Vibes, Style No. 1933, is pictured below from Exhibit AD to the Welch Dec. at SKNY0094915.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

81.    The Skechers Sport Energy 2 Vibes, Style No. 1933, was first shipped on October 17, 2001, and Skechers sold a total of 190,260 pairs. Sadis Dec. at ¶ 18; Welch Dec. Ex. AC.

**Plaintiff's Response:**  Undisputed.

82.    Mr. Besanceney admitted that the Skechers Sport Energy 2 Dynasty – which was featured in a Skechers catalog from Fall 2002, two years before the Traveltime was released – has all of the claimed Traveltime trade dress elements, including: (1) a slip-on, clog-style upper; (2) a "swirl" midsole that runs from the base of the toe cap and widens as it flows to the heel; (3) an indented curved line along the midsole from the front to the heel and another indented line on the rear of the shoe; (4) a combined contoured midsole and outsole with an arch that creates an open area between the outsole and heel; (5) a rubber outsole extending up from the bottom of the shoe to the front of the shoe to form a bumper; and (6) design elements on the heel segment. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 157:20-159:14; Compl., Dkt. 1 at ¶ 10. Skechers Sport Energy 2 Dynasty, Style No. 1833, is pictured below from Exhibit AD to the Welch Dec. at SKNY0094916.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66

83.   Skechers Sport Energy 2 Dynasty, Style No. 1833, was first shipped on

November 20, 2001, and Skechers sold a total of 188,744 pairs. Sadis Dec. at ¶ 19; Welch Dec.

Ex. AC.

**Plaintiff's Response:**  Undisputed.

84.   Mr. Besanceney admitted that the swirl midsole featured on the Skechers Sport

Energy 2 Dynasty is "typical" of athletic shoes and common on athleisure shoes. Welch Dec. Ex.

J (Besanceney Depo. Tr.) at 158:7-12.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

85.   Mr. Besanceney admitted that the Skechers Sport Energy 2 Electric – which was

featured in a Skechers catalog from Fall 2002, two years before the Traveltime was released –

has all of the claimed Traveltime trade dress elements, including: (1) a slip-on, clog-style upper;

(2) a "swirl" midsole that runs from the base of the toe cap and widens as it flows to the heel; (3)

an indented curved line along the midsole from the front to the heel and another indented line on

the rear of the shoe; (4) a combined contoured midsole and outsole with an arch that creates an

open area between the outsole and heel; (5) a rubber outsole extending up from the bottom of the

shoe to the front of the shoe to form a bumper; and (6) design elements on the heel segment.

Welch Dec. Ex. J (Besanceney Depo. Tr.) at 159:15-25; 160:7-23; Compl., Dkt. 1 at ¶ 10.

Skechers Sport Energy 2 Electric, Style No. 1832, is pictured below from Exhibit AD to the Welch Dec. at SKNY0094916.



    **Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

86.    The Skechers Sport Energy 2 Electric, Style No. 1832, was first shipped on March 1, 2002, and Skechers sold a total of 206,458 pairs. Sadis Dec. at ¶ 20; Welch Dec. Ex. AC.

    **Plaintiff's Response:**  Undisputed.

87.    Mr. Besanceney admitted that the swirl midsole featured on the Skechers Sport Energy 2 Electric is "typical" of athletic shoes and frequently appears on athleisure shoes. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 160:1-6.

    **Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

88.    Mr. Besanceney admitted that the Skechers Sport Energy 2 Electric and the Traveltime both possess a stripe or yoke down the top of the upper and that yoke ends in a T or Y shape at the toe of the shoe. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 151:11-16; 160:24-161:4.

    **Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

89.    Mr. Besanceney admitted that the Skechers Sport Energy 2 Crossway – which was featured in a Skechers catalog from Fall 2002, two years before the Traveltime was released – has all of the claimed Traveltime trade dress elements, including: (1) a slip-on, clog-style upper; (2) : a "swirl" midsole that runs from the base of the toe cap and widens as it flows to the

heel; (3) an indented curved line along the midsole from the front to the heel and another indented line on the rear of the shoe; (4) a combined contoured midsole and outsole with an arch that creates an open area between the outsole and heel; (5) a rubber outsole extending up from the bottom of the shoe to the front of the shoe to form a bumper; and (6) design elements on the heel segment. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 161:7-162:12; Compl., Dkt. 1 at ¶ 10. Skechers Sport Energy 2 Crossway, Style No. 1839, is pictured below from Exhibit AD to the Welch Dec. at SKNY0094918.



      **Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

90.    The Skechers Sport Energy 2 Crossway, Style No. 1839, was first shipped on March 4, 2002, and Skechers sold a total of 35,357 pairs. Sadis Dec. at ¶ 21; Welch Dec. Ex. AC.

      **Plaintiff's Response:**  Undisputed.

91.    Mr. Besanceney admitted that the Skechers Sport Energy 2 M Bracer – which was featured in a Skechers catalog from Fall 2002, two years before the Traveltime was released – has all of the claimed Traveltime trade dress elements, including: (1) a slip-on, clog-style upper; (2) a distinctive "swirl" midsole that runs from the base of the toe cap and widens as it flows to the heel; (3) an indented curved line along the midsole from the front to the heel and another indented line on the rear of the shoe; (4) a combined contoured midsole and outsole with an arch

that creates an open area between the outsole and heel; (5) a rubber outsole extending up from the bottom of the shoe to the front of the shoe to form a bumper; and (6) design elements on the heel segment. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 162:13-163:18; Compl., Dkt. 1 at ¶ 10. shows Skechers Sport Energy 2 M-Bracer, Style No. 1934, is pictured below from Exhibit AD to the Welch Dec. at SKNY0094919.



**Plaintiff's Response:** Disputed. *See* Response to SF ¶ 66.

92. The Skechers Sport Energy 2 M Bracer, Style No. 1934, was first shipped on October 25, 2001, and Skechers sold a total of 67,360 pairs. Sadis Dec. at ¶ 22; Welch Dec. Ex. AC.

**Plaintiff's Response:** Undisputed.

93. Mr. Besanceney admitted that the Skechers Sport Energy Orbit, later called the Skechers Energy Orbit – which was featured in a Skechers catalog from Fall 2002, two years before the Traveltime was released, and in a Skechers catalog from 2004, the same year the Traveltime was released – has all of the claimed Traveltime trade dress elements, including: (1) a slip-on, clog-style upper; (2) a "swirl" midsole that runs from the base of the toe cap and widens as it flows to the heel; (3) an indented curved line along the midsole from the front to the heel and another indented line on the rear of the shoe; (4) a combined contoured midsole and outsole with an arch that creates an open area between the outsole and heel; (5) a rubber outsole extending up from the bottom of the shoe to the front of the shoe to form a bumper; and (6)

design elements on the heel segment. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 163:25-165:12; 190:23-192:8; Compl., Dkt. 1 at ¶ 10. Skechers Sport Energy Orbit, Style No. 2674, is pictured below from Exhibit AD to the Welch Dec. at SKNY0094924.



     **Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

94.    The Skechers Sport Energy Orbit, Style No. 2674, was first shipped on March 23, 2001 and Skechers sold a total of 855,465 pairs. Sadis Dec. at ¶ 23; Welch Dec. Ex. AC.

     **Plaintiff's Response:**  Undisputed

95.    Mr. Besanceney admitted that the swirl midsole featured on the Skechers Sport Energy Orbit is "typical" of athletic shoes and common on athleisure shoes. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 164:12-17; 191:9-14.

     **Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

96.    Mr. Besanceney admitted that the Skechers Energy Orbit and the Traveltime both possess a "yoke" on the upper. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 151:11-16; 192:9-11.

     **Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

97.    Mr. Besanceney admitted that the Skechers Sport Energy Backslider – which was featured in a Skechers catalog from Fall 2002, two years before the Traveltime was released – has all of the claimed Traveltime trade dress elements, including: (1) a slip-on, clog-style upper; (2) : a "swirl" midsole that runs from the base of the toe cap and widens as it flows to the heel; (3) an indented curved line along the midsole from the front to the heel and another indented line

on the rear of the shoe; (4) a combined contoured midsole and outsole with an arch that creates

an open area between the outsole and heel; (5) a rubber outsole extending up from the bottom of

the shoe to the front of the shoe to form a bumper; and (6) design elements on the heel segment.

Welch Dec. Ex. J (Besanceney Depo. Tr.) at 165:13-17; 166:3-11; 166:18-167:13; Compl., Dkt.

1 at ¶ 10. Skechers Sport Energy Backslider, Style No. 2660, is pictured below from Exhibit AD

to the Welch Dec. at SKNY0094924.



> **Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

98.    Skechers Sport Energy Backslider, Style No. 2660, was first shipped on

November 14, 2000, and Skechers sold a total of 862,387 pairs. Sadis Dec. at ¶ 24; Welch Dec.

Ex. AC.

> **Plaintiff's Response:**  Undisputed.

99.    Mr. Besanceney admitted that the swirl midsole featured on the Skechers Sport

Energy Backslider is "typical" of athletic shoes and common on athleisure shoes. Welch Dec.

Ex. J (Besanceney Depo. Tr.) at 166:12-17.

> **Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

100.  Mr. Besanceney admitted that the Skechers Sport Tattle Tales Myth – which was

featured in a Skechers catalog from Fall 2002, two years before the Traveltime was released –

has all of the claimed Traveltime trade dress elements, including: (1) a slip-on, clog-style upper;

(2) a "swirl" midsole that runs from the base of the toe cap and widens as it flows to the heel; (3)

an indented curved line along the heel; (4) a combined contoured midsole and outsole with an

arch that creates an open area between the outsole and heel; (5) a rubber outsole extending up

from the bottom of the shoe to the front of the shoe to form a bumper; and (6) design elements on

the heel segment. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 167:14-169:3; Compl., Dkt. 1 at ¶

10. Skechers Sport Tattle Tales Myth, Style No. 1916 is pictured below from Exhibit AD to the

Welch Dec. at SKNY0094930.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

101.  Skechers Sport Tattle Tales Myth, Style No. 1916, were first shipped on August

27, 2001, and Skechers sold a total of 20,722 pairs. Sadis Dec. at ¶ 25; Welch Dec. Ex. AC.

**Plaintiff's Response:**  Undisputed.

102.  Mr. Besanceney admitted that the swirl midsole featured on the Skechers Sport

Tattle Tales Myth is "typical" of athletic shoes and common on athleisure shoes. Welch Dec. Ex.

J (Besanceney Depo. Tr.) at 168:1-6.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

103.  Mr. Besanceney admitted that the Skechers Sport Tattle Tales Myth and the

Traveltime both possess a yoke at the top of the upper. Welch Dec. Ex. J (Besanceney Depo. Tr.)

at 169:7-10.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

104.  Mr. Besanceney admitted that the Skechers Sport Tattle Tales – which was featured in a Skechers catalog from Fall 2002, two years before the Traveltime was released – has all of the claimed Traveltime trade dress elements, including: (1) a slip-on, clog-style upper; (2) a "swirl" midsole that runs from the base of the toe cap and widens as it flows to the heel; (3) an indented curved line along the midsole from the front to the heel and another indented line on the rear of the shoe; (4) a combined contoured midsole and outsole with an arch that creates an open area between the outsole and heel; (5) a rubber outsole extending up from the bottom of the shoe to the front of the shoe to form a bumper; and (6) design elements on the heel segment. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 169:11-170:19; Compl., Dkt. 1 at ¶ 10. Skechers Sport Tattle Tales, Style No. 2463 is pictured below from Exhibit AD to the Welch Dec. at SKNY0094930.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

105.  Skechers Sport Tattle Tales, Style No. 2463, was first shipped on August 15, 2001, and Skechers sold a total of 11,327 pairs. Sadis Dec. at ¶ 26; Welch Dec. Ex. AC.

**Plaintiff's Response:**  Undisputed.

106.  Mr. Besanceney admitted that the swirl midsole featured on the Skechers Sport Tattle Tales is "typical" of athletic shoes and common on athleisure shoes. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 169:20-25.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

107.  Mr. Besanceney admitted that the Skechers Sport Tattle Tales and the Traveltime both possess a yoke on the upper of the shoe. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 151:11-16; 170:21-23.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

108.  Mr. Besanceney admitted that both the Skechers Sport Tattle Tales Myth and Skechers Sport Tattle Tales have a U-shaped gore on the upper where the foot enters the shoe to help the shoe stretch as it is opened. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 170:24-171:10.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

109.  Mr. Besanceney admitted that the Skechers Sport Noogies Heckler – which was featured in a Skechers catalog from Fall 2002, two years before the Traveltime was released – has the claimed Traveltime trade dress elements, including: (1) a slip-on, clog-style upper.; (2) a "swirl" midsole that runs from the base of the toe cap and widens as it flows to the heel; (3) an indented curved line along the midsole from the front to the heel and another indented line on the rear of the shoe; (5) a rubber outsole extending up from the bottom of the shoe to the front of the shoe to form a bumper; and (6) design elements on the midsole at the heel segment. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 171:11-172:18; Compl., Dkt. 1 at ¶ 10. Skechers Sport Noogies Heckler, Style No. 2457 is pictured below from Exhibit AD to the Welch Dec. at SKNY0094934.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

110.  Skechers Sport Noogies Heckler, Style No. 2457, was first shipped on December 28, 2000, and Skechers sold a total of 202,687 pairs. Sadis Dec. at ¶ 27; Welch Dec. Ex. AC.

**Plaintiff's Response:**  Undisputed.

111.  The Skechers Sport Noogies Heckler has a combined contoured midsole and outsole with an arch that creates an open area between the outsole and heel. Welch Dec. Ex. AD at SKNY0094934.

> **Plaintiff's Response:**  Disputed. The overall design of the referenced shoe is completely different than the overall design of the TRAVELTIME shoe. It is inadequate to compare discrete elements of each shoe without consideration of the overall design of each shoe.

112.  Mr. Besanceney admitted that the swirl midsole featured on the Skechers Sport Noogies Heckler is "typical" of athletic shoes and common on athleisure shoes. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 171:22-172:2.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

113.  Mr. Besanceney admitted that the Skechers Sport Noogies Heckler and the Traveltime both possess a yoke on the upper of the shoe. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 151:11-16; 172:19-173:12.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

114.  Mr. Besanceney admitted that the Skechers Sport Noogies Bedevil – which was featured in a Skechers catalog from Fall 2002, two years before the Traveltime was released – has all of the claimed Traveltime trade dress elements, including: (1) a slip-on, clog-style upper; (2) a distinctive "swirl" midsole that runs from the base of the toe cap and widens as it flows to

the heel; (3) an indented curved line along the midsole from the front to the heel and another

indented line on the rear of the shoe; (4) a combined contoured midsole and outsole with an arch

that creates an open area between the outsole and heel; (5) a rubber outsole extending up from

the bottom of the shoe to the front of the shoe to form a bumper; and (6) design elements on the

heel segment. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 173:13-174:-25; Compl., Dkt. 1 at ¶

10. Skechers Sport Noogies Bedevil, Style No. 1936, is pictured below from Exhibit AD to the

Welch Dec. at SKNY0094934.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

115.  The Skechers Sport Noogies Bedevil, Style No. 1936, were first shipped on

October 22, 2001, and Skechers sold a total of 73,410 pairs. Sadis Dec. at ¶ 28; Welch Dec. Ex.

AC.

**Plaintiff's Response:**  Undisputed.

116.  Mr. Besanceney admitted that the swirl midsole featured on the Skechers Sport

Noogies Bedevil is "typical" of athletic shoes and common on athleisure shoes. Welch Dec. Ex. J

(Besanceney Depo. Tr.) at 174:2-8.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66

117.  Mr. Besanceney admitted that the Skechers Sport Noogies Bedevil and the Traveltime both possess a yoke on the upper of the shoe. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 151:11-16; 175:1-3.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66

118.  Mr. Besanceney admitted that the Skechers Sport Noogies Mimic – which was featured in a Skechers catalog from Fall 2002, two years before the Traveltime was released – has the claimed Traveltime trade dress elements, including: (2) a "swirl" midsole that runs from the base of the toe cap and widens as it flows to the heel; (3) an indented curved line along the midsole from the front to the heel and another indented line on the rear of the shoe; (4) a combined contoured midsole and outsole with an arch that creates an open area between the outsole and heel; (5) a rubber outsole extending up from the bottom of the shoe to the front of the shoe to form a bumper; and (6) design elements on the heel segment. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 175:4-7; 175:22-176:19; Compl., Dkt. 1 at ¶ 10. Skechers Sport Noogies Mimic, Style No. 1830, is pictured below from Exhibit AD to the Welch Dec. at SKNY0094934.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66

119.  The Skechers Sport Noogies Mimic is an open-back shoe. Welch Dec. Ex. AD at SKNY0094934.

**Plaintiff's Response:**  Undisputed.

120.  Mr. Besanceney admitted that the Skechers Sport Noogies Mimic and the Traveltime both possess a yoke on the upper of the shoe. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 151:11-16; 176:20-21.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

121.  Mr. Besanceney admitted that the Skechers Premium Flick – which was featured in a Skechers catalog from 2004, the same year the Traveltime was released – has all of the claimed Traveltime trade dress elements, including:(1) a slip-on, clog-style upper; (2) : a "swirl" midsole that runs from the base of the toe cap and widens as it flows to the heel; (3) an indented curved line along the midsole from the front to the heel and another indented line on the rear of the shoe; (4) a combined contoured midsole and outsole with an arch that creates an open area between the outsole and heel; (5) a rubber outsole extending up from the bottom of the shoe to the front of the shoe to form a bumper; and (6) design elements on the heel segment. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 178:11-24; 179:6-24; Compl., Dkt. 1 at ¶ 10. Skechers Premium Flick, Style No. 11052 is pictured below from Exhibit AE to the Welch Dec. at SKNY0095919.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

122.  Mr. Besanceney admitted that the swirl midsole featured on the Skechers Premium Flick is "typical" of athletic shoes and often present on athleisure shoes. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 178:25-179:5.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

123.  The Skechers Premium Flick, Style No. 11052, was first shipped on April 9, 2004, and Skechers sold a total of 24,959 pairs. Sadis Dec. at ¶ 30; Welch Dec. Ex. AC.

**Plaintiff's Response:**  Undisputed.

124.  Mr. Besanceney admitted that the Skechers Premium Flick and the Traveltime both possess a yoke on the upper of the shoe. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 151:11-16; 179:25-180:1.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

125.  Mr. Besanceney admitted that the Skechers Premium Getgos – which was featured in a Skechers catalog from 2004, the same year the Traveltime was released – has all of the claimed Traveltime trade dress elements, including: (1) a slip-on, clog-style upper; (2) a "swirl" midsole that runs from the base of the toe cap and widens as it flows to the heel; (3) an indented curved line along the midsole from the front to the heel and another indented line on the rear of the shoe; (4) a combined contoured midsole and outsole with an arch that creates an open area between the outsole and heel; (5) a rubber outsole extending up from the bottom of the shoe to the front of the shoe to form a bumper; and (6) design elements on the heel segment. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 180:2-181:11; Compl., Dkt. 1 at ¶ 10. Skechers Premium GetGos, Style No. 11043 is pictured below from Exhibit AE to the Welch Dec. at SKNY0095920.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

126.  Mr. Besanceney admitted that the swirl midsole featured on the Skechers Premium Getgos is "typical" of athletic shoes and common on athleisure shoes. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 180:13-18.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

127.  The Skechers Premium Getgos, Style No. 11043, was first shipped on March 2, 2004, and Skechers sold a total of 14,378 pairs. Sadis Dec. at ¶ 31; Welch Dec. Ex. AC.

**Plaintiff's Response:**  Undisputed.

128.  Mr. Besanceney admitted that the Skechers Premium Peppermint – which was featured in a Skechers catalog from 2004, the same year the Traveltime was released – has all of the claimed Traveltime trade dress elements, including: (1) a slip-on, clog-style upper; (2) a "swirl" midsole that runs from the base of the toe cap and widens as it flows to the heel; (3) an indented curved line along the midsole from the front to the heel and another indented line on the rear of the shoe; (4) a combined contoured midsole and outsole with an arch that creates an open area between the outsole and heel; (5) a rubber outsole extending up from the bottom of the shoe to the front of the shoe to form a bumper; and (6) design elements on the heel segment. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 181:12-182:21; Compl., Dkt. 1 at ¶ 10. Skechers Premium Peppermint, Style No. 11061 is pictured below from Exhibit AE to the Welch Dec. at SKNY0095920.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

129.  Mr. Besanceney admitted that the swirl midsole featured on the Skechers Premium Peppermint is "typical" of athletic shoes and common on athleisure shoes. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 182:6-13.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

130.  The Skechers Premium Peppermint, Style No. 11061, was first shipped on May 18, 2004, and Skechers sold a total of 5,897 pairs. Sadis Dec. at ¶ 32; Welch Dec. Ex. AC.

**Plaintiff's Response:**  Undisputed.

131.  Mr. Besanceney admitted that the Skechers Premium Reward – which was featured in a Skechers catalog from 2004, the same year the Traveltime was released – has all of the claimed Traveltime trade dress elements, including: (1) a slip-on, clog-style upper; (2) a "swirl" midsole that runs from the base of the toe cap and widens as it flows to the heel; (3) an indented curved line along the midsole from the front to the heel and another indented line on the rear of the shoe; (4) a combined contoured midsole and outsole with an arch that creates an open area between the outsole and heel; (5) a rubber outsole extending up from the bottom of the shoe to the front of the shoe to form a bumper; and (6) design elements on the heel segment. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 182:22-184:3; Compl., Dkt. 1 at ¶ 10. Skechers Premium Reward, Style No. 1712 is pictured below from Exhibit AE to the Welch Dec. at SKNY0095920.



**Plaintiff's Response:** Disputed. *See* Response to SF ¶ 66.

132.  Mr. Besanceney admitted that the swirl midsole featured on the Skechers Premium Reward is "typical" of athletic shoes and common on athleisure shoes. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 183:5-10.

**Plaintiff's Response:** Disputed. *See* Response to SF ¶ 66.

133.  The Skechers Premium Reward, Style No. 1712, was first shipped on July 30, 2003, and Skechers sold 421,809 pairs. Sadis Dec. at ¶ 33; Welch Dec. Ex. AC.

**Plaintiff's Response:** Undisputed.

134.  Mr. Besanceney admitted that the Skechers Premium Spotlight – which was featured in a Skechers catalog from 2004, the same year the Traveltime was released – has all of the claimed Traveltime trade dress elements, including: (1) a slip-on, clog-style upper; (2) a "swirl" midsole that runs from the base of the toe cap and widens as it flows to the heel; (3) an indented curved line along the midsole from the front to the heel and another indented line on the rear of the shoe; (4) a combined contoured midsole and outsole with an arch that creates an open area between the outsole and heel; (5) a rubber outsole extending up from the bottom of the shoe to the front of the shoe to form a bumper; and (6) design elements on the heel segment. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 184:4-185:14; Compl., Dkt. 1 at ¶ 10. Skechers Premium

Spotlight, Style No. 11079 is pictured below from Exhibit AE to the Welch Dec. at SKNY0095921.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

135.  Mr. Besanceney admitted that the swirl midsole featured on the Skechers Premium Spotlight is "typical" of athletic shoes and common on athleisure shoes. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 184:15-20.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

136.  The Skechers Premium Spotlight, Style No. 11079, was first shipped on May 18, 2004, and Skechers sold a total of 23,559 pairs. Sadis Dec. at ¶ 34; Welch Dec. Ex. AC.

**Plaintiff's Response:**  Undisputed.

137.  Mr. Besanceney admitted that the Skechers Premium Delicious – which was featured in a Skechers catalog from 2004, the same year the Traveltime was released – has all of the claimed Traveltime trade dress elements, including: (1) a slip-on, clog-style upper; (2) a "swirl" midsole that runs from the base of the toe cap and widens as it flows to the heel; (3) an indented curved line along the midsole from the front to the heel and another indented line on the rear of the shoe; (4) a combined contoured midsole and outsole with an arch that creates an open area between the outsole and heel; (5) a rubber outsole extending up from the bottom of the shoe to the front of the shoe to form a bumper; and (6) design elements on the heel segment. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 185:15-186:22; Compl., Dkt. 1 at ¶ 10. Skechers Premium

Delicious, Style No. 11009 is pictured below from Exhibit AE to the Welch Dec. at
SKNY0095921.



> **Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

138.  Mr. Besanceney admitted that the swirl midsole featured on the Skechers
Premium Delicious is "typical" of athletic shoes and common on athleisure shoes. Welch Dec.
Ex. J (Besanceney Depo. Tr.) at 185:23-186:3.

> **Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

139.  The Skechers Premium Delicious, Style No. 11009, was first shipped on March 2,
2004, and Skechers sold a total of 40,817 pairs. Sadis Dec. at ¶ 35; Welch Dec. Ex. AC.

> **Plaintiff's Response:**  Undisputed.

140.  Mr. Besanceney admitted that the Skechers Premium Bright Eyes – which was
featured in a Skechers catalog from 2004, the same year the Traveltime was released – has all of
the claimed Traveltime trade dress elements, including: (1) a slip-on, clog-style upper; (2) a
"swirl" midsole that runs from the base of the toe cap and widens as it flows to the heel; (3) an
indented curved line along the midsole from the front to the heel and another indented line on the
rear of the shoe; (4) a combined contoured midsole and outsole with an arch that creates an open
area between the outsole and heel; (5) a rubber outsole extending up from the bottom of the shoe
to the front of the shoe to form a bumper; and (6) design elements on the heel segment. Welch
Dec. Ex. J (Besanceney Depo. Tr.) at 186:22-187:23; Compl., Dkt. 1 at ¶ 10. Skechers Premium

Bright Eyes, Style No. 11021 is pictured below from Exhibit AE to the Welch Dec at SKNY0095921.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

141.  The Skechers Premium Bright Eyes, Style No. 11021, was first shipped on December 16, 2003, and Skechers sold a total of 1,167,960 pairs. Sadis Dec. at ¶ 36; Welch Dec. Ex. AC.

**Plaintiff's Response:**  Undisputed.

142.  Mr. Besanceney admitted that the Skechers Premium Hookups – which was featured in a Skechers catalog from 2004, the same year the Traveltime was released – has all of the claimed Traveltime trade dress elements, including: (1) a slip-on, clog-style upper; (2) : a "swirl" midsole that runs from the base of the toe cap and widens as it flows to the heel; (3) an indented curved line along the midsole from the front to the heel and another indented line on the rear of the shoe; (4) a combined contoured midsole and outsole with an arch that creates an open area between the outsole and heel; (5) a rubber outsole extending up from the bottom of the shoe to the front of the shoe to form a bumper; and (6) design elements on the heel segment. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 187:24-188:25; Compl., Dkt. 1 at ¶ 10. Skechers Premium Hookups, Style No. 11062 is pictured below from Exhibit AE to the Welch Dec. at SKNY0095921.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 66.

143.  The Skechers Premium Hookups, Style No. 11062, was first shipped on May 7, 2004, and Skechers sold a total of 5,007 pairs. Sadis Dec. at ¶ 37; Welch Dec. Ex. AC.

**Plaintiff's Response:**  Undisputed.

144.  Mr. Besanceney admitted that the Skechers Premium Sizzling – which was featured in a Skechers catalog from 2004, the same year the Traveltime was released – has all of the claimed Traveltime trade dress elements, including: (1) a slip-on, clog-style upper; (2) a "swirl" midsole that runs from the base of the toe cap and widens as it flows to the heel; (3) an indented curved line along the midsole from the front to the heel and another indented line on the rear of the shoe; (4) a combined contoured midsole and outsole with an arch that creates an open area between the outsole and heel; (5) a rubber outsole extending up from the bottom of the shoe to the front of the shoe to form a bumper; and (6) design elements on the heel segment. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 189:1-190:10; Compl., Dkt. 1 at ¶ 10. Skechers Premium Sizzling, Style No. 11070 is pictured below from Exhibit AE to the Welch Dec. at SKNY0095922.



**Plaintiff's Response:** Disputed. *See* Response to SF ¶ 66.

145.  Mr. Besanceney admitted that the swirl midsole featured on the Skechers

Premium Sizzling is "typical" of athletic shoes and common on athleisure shoes. Welch Dec. Ex.

J (Besanceney Depo. Tr.) at 189:12-17.

> **Plaintiff's Response:** Disputed. *See* Response to SF ¶ 66.

146.  The Skechers Premium Sizzling, Style No. 11070, was first shipped on June 7,

2004, and Skechers sold a total of 120,762 pairs. Sadis Dec. at ¶ 38; Welch Dec. Ex. AC.

> **Plaintiff's Response:** Undisputed.

147.  Skechers continued to sell casual, open-back shoes bearing many of the claimed

trade dress elements into the 2010s, with such offerings as the Skechers D'Lites Nuzzles,

Skechers Premium Sumptuous, Skechers D'Lites Levitate, D'Lite Airy, Skechers Sport Energy

Lovin', Skechers Bravos Shakers, Skechers Flex Fit First Place, Skechers Flex Fit Slam Dunk,

Skechers Agility Kickback, and Skechers D'Lites Star Status. Sadis Dec. at ¶¶ 39-48.

> **Plaintiff's Response:** Disputed. The overall designs of the referenced shoes are
> completely different than the overall design of the TRAVELTIME shoe. It is
> inadequate to compare discrete elements of each shoe without consideration of the
> overall design of each shoe. *See generally*, Ex. 4, DeZao  Dep. Tr. at 169:21-207:2

(comparing the TRAVELTIME shoe with several third-party shoes and describing how the shoes can share similar elements but still maintain completely different designs for the upper, midsole, or outsole that contribute to a completely different overall design impression). There are infinite ways to design a comfort slip-on shoe without appropriating the overall design of the TRAVELTIME shoe. All of the non-Commute Time shoes presented by Skechers in support of its summary judgment motion evidence that there are numerous styles of Skechers that compete fairly in the market by incorporating design elements that do not copy the overall design of the TRAVELTIME shoe. The referenced Skechers shoes further demonstrate there was no legitimate need to copy the TRAVELTIME midsole/outsole and uppers, as well selecting a name that is confusingly similar to TRAVELTIME in order to fairly compete in the slip-on comfort shoe category.

148.   The Skechers D'Lites Nuzzles bears all elements of the claimed trade dress, and is depicted below. Welch Dec. Ex. AF at SKNY0096638 (showing the Skechers D'Lites Nuzzles, Style No. 11467 from the Skechers 2008).



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 147.

59

149.  The Skechers D'Lites Nuzzles, Style No. 11467, was first shipped on June 30, 2008, and Skechers sold 97,930 pairs. Sadis Dec. at ¶ 39; Welch Dec. Ex. AC.

**Plaintiff's Response:** Undisputed.

150.  The Skechers Premium Sumptuous bears all elements of the claimed trade dress, and is depicted below. Welch Dec. Ex. AF at SKNY0096639 (showing the Skechers Premium Sumptuous, style number 11302, offered for sale in the Skechers 2008 catalog).



**Plaintiff's Response:** Disputed. *See* Response to SF ¶ 147.

151.  The Skechers Premium Sumptuous, Style No. 11302, was first shipped on September 12, 2006, and Skechers sold a total of 206,826 pairs. Sadis Dec. at ¶ 40; Welch Dec. Ex. AC.

**Plaintiff's Response:** Undisputed.

152.  The Skechers D'Lites Levitate, Style No. 11448, bears all elements of the claimed trade dress, and is shown below. Welch Dec. Ex. AG at SKNY0096692 (showing the Skechers D'Lites Levitate, style number 11448, offered for sale in the Skechers Spring 2008 catalog).



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 147

153.  The Skechers D'Lites Levitate, Style No. 11448, was first shipped on March 24, 2008, and Skechers sold a total of 12,999 pairs. Sadis Dec. at ¶ 41; Welch Dec. Ex. AC.

**Plaintiff's Response:**  Undisputed.

154.  Skechers D'Lites Airy, Style No. 11449, bears all elements of the claimed trade dress, and is shown below. Welch Dec. Ex. AG at SKNY0096692 (showing the Skechers D'Lites Airy, Style No. 11449, offered for sale in the Skechers Spring 2008 catalog).



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 147

155.  The Skechers D'Lites Airy, Style No. 11449, was first shipped on March 24, 2008, and Skechers sold a total of 162,657 pairs. Sadis Dec. at ¶ 42; Welch Dec. Ex. AC.

**Plaintiff's Response:**  Undisputed.

156.  The Skechers Sport Energy Lovin', style No. 11900, bears all elements of the claimed trade dress, and is shown below. Welch Dec. Ex. AH at SKNY0096730 (showing the Skechers Sport Energy Lovin', style number 11900, offered for sale in the Skechers Women's Sport Fall 2009 catalog).



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 147.

157.  The Skechers Bravos Shakers, Style No. 11628, bears all elements of the claimed trade dress, and is shown below. Welch Dec. Ex. AI at SKNY0097117 (showing the Skechers Bravos Shakers, style number 11628, offered for sale in the Skechers Sport 2011-2012 catalog).



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 147.

158.  Skechers Bravos Shakers, Style No. 11628, was first shipped on December 2, 2011, and Skechers sold a total of 22,498 pairs. Sadis Dec. at ¶ 44; Welch Dec. Ex. AC.

**Plaintiff's Response:**  Undisputed.

159.  The Skechers Flex Fit First Place, Style No. 11663, bears the first, second, third, and fifth elements of the claimed trade dress, and is depicted below. Welch Dec. Ex. AI at SKNY0097121.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 147.

160.  The Skechers Flex Fit First Place, Style No. 11663, was first shipped on April 26, 2012, and Skechers sold 13,594 pairs. Sadis Dec. at ¶ 45; Welch Dec. Ex. AC.

**Plaintiff's Response:**  Undisputed.

161.  The Skechers Flex Fit Slam Dunk, Style No. 11664, bears the first, second, third, and fifth elements of the claimed trade dress, and is depicted below. Welch Dec. Ex. AI at SKNY0097121.



**Plaintiff's Response:** Disputed. *See* Response to SF ¶ 147.

162.  The Skechers Flex Fit Slam Dunk, Style No. 11664, was first shipped on May 4, 2012, and Skechers sold 39,891 pairs. Sadis Dec. at ¶ 46; Welch Dec. Ex. AC.

**Plaintiff's Response:** Undisputed.

163.  Skechers Agility Kick Back, Style No. 11697, bears the first, second, third, fourth, and fifth elements of the claimed trade dress, and is depicted below. Welch Dec. Ex. ## at SKNY0000767.



**Plaintiff's Response:** Disputed. *See* Response to SF ¶ 147.

164.  The Skechers D'Lites Star Status, Style No. 11586, bears all elements of the claimed trade dress, and is depicted below. Welch Dec. Ex. CZ at SKNY0000767.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 147.

165.  The Skechers D'Lites Star Status, Style No. 11586, was first offered for sale on December 11, 2009, and Skechers sold 13,970 pairs. Sadis Dec. at ¶ 48; Welch Dec. Ex. AC.

**Plaintiff's Response:**  Undisputed.

## H.  Third-Party Shoes Featuring Easy Spirit's Claimed Trade Dress Elements

166.  The below paragraphs refer to the various claimed trade dress elements by the following numbers: (1) a slip-on, clog-style upper; (2) a distinctive "swirl" mid-sole that runs from the base of the toe cap, gradually widening as it flows to the heel; (3) an indented curved line along the midsole from the front to the heel; another indented line on the rear of the shoe; (4) a combined contoured midsole/outsole with an arch that creates an open area between the outsole and heel; (5) the rubber outsole extending up from the bottom of the shoe to the front of the shoe to form a bumper; and (6) four circular design elements on the midsole at the heel segment. With

respect to the four circular design elements on the midsole at the heel segment, any design element on the heel segment is considered to capture the claimed trade dress, per the allegations in the Complaint. Compl., Dkt. 1 at ¶ 21.

> **Plaintiff's Response:** Disputed. The overall designs of the referenced shoes are completely different than the overall design of the TRAVELTIME shoe. It is inadequate to compare discrete elements of each shoe without consideration of the overall design of each shoe. *See generally*, Ex. 4, DeZao Dep. Tr. at 169:21-207:2 (comparing the TRAVELTIME shoe with several third-party shoes and describing how the shoes can share similar elements but still maintain completely different designs for the upper, midsole, or outsole that contribute to a completely different overall design impression). There are infinite ways to design a comfort slip-on shoe without appropriating the overall design of the TRAVELTIME shoe. All of the third-party shoes presented by Skechers in support of its summary judgment motion evidence that there are numerous styles of third-party shoes that compete fairly in the market by incorporating design elements that do not copy the overall design of the TRAVELTIME shoe. The referenced third-party shoes further demonstrate there was no legitimate need to copy the TRAVELTIME midsole/outsole and uppers, as well selecting a name that is confusingly similar to TRAVELTIME in order to fairly compete in the slip-on comfort shoe category.

167.   The third-party shoe Caleres Ryka Lillianna Mule possesses all six elements of the Traveltime trade dress. Welch Dec. Ex. AJ (shown below). The elements can be seen below:



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 166.

168.  The third-party shoe Dansko Kenzie Clog possesses all six elements of the

Traveltime trade dress, shown below. Welch Dec. Ex. AL (shown below).



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 166.

169.  From 2010 to 2019, Dansko sold REDACTED pairs of the Dansko Kenzie Clog. Welch

Dec. Ex. AM Declaration Certifying Authenticity of Records from Dansko ("Dansko Dec.") at 1;

Welch Dec. Ex. A at DANSK_000001.

**Plaintiff's Response:**  Undisputed.

170.  The third-party shoe Dansko Kaya Clog possesses all six elements of the Traveltime trade dress. Welch Dec. Ex. AN (shown below).



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 166.

171.  From 2010 to 2019, Dansko sold ▮REDACTED▮ pairs of the Dansko Kenzie Clog. Welch Dec. Ex. AM at Dansko Dec. at 1; Welch Dec. Ex. AM at DANSK_000001.

**Plaintiff's Response:**  Undisputed.

172.  The third-party shoe New Balance 801 possesses all six elements of the Traveltime trade dress. Welch Dec. Ex. AO at SKNY0098956. Easy Spirit Rule 30(b)(6) designee Mr. Besanceney admits that the New Balance 801 shoe has an open-back clog style upper, a swirl midsole, recessed lines on the midsole, a recessed line at the heel, a combined contoured midsole and outsole with an arch creating a break between the heel and the outsole, an outsole extending up from the bottom of the shoe to the front to form a bumper, and a design element on the heel. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 231:19-235:6; Welch Dec. Ex. AO. The third-party shoe New Balance 801 possesses all six elements of the Traveltime trade dress, as shown below.



**Plaintiff's Response:** Disputed. *See* Response to SF ¶ 166.

173.  Mr. Besanceney was aware of the New Balance 801 shoe during his time working as the designer of the Traveltime shoe and other Easy Spirit designers were also aware of the New Balance 801 shoe. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 233:21-235:6.

**Plaintiff's Response:** Undisputed.

174.  Easy Spirit considers the third-party company New Balance's "801" shoe to be a competitor to the Traveltime. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 234:11-13; Welch Dec. Ex. AO.

**Plaintiff's Response:** Undisputed.

175.  From 2006 to 2016, New Balance sold ▮REDACTED▮ pairs of the New Balance 801. Welch Dec. Ex. AP Declaration Certifying Authenticity of Records from New Balance ("New Balance Dec.") at 1; Welch Dec. Ex. AP at NEWB_000001-02.

**Plaintiff's Response:** Undisputed.

69

176.  Easy Spirit considers the third-party company New Balance's "802" shoe to be a competitor to the Traveltime. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 237:2-14; Welch Dec. Ex. AQ.

**Plaintiff's Response:**  Undisputed.

177.  Easy Spirit's Rule 30(b)(6) designee Mr. Besanceney admits that the New Balance 802 shoe is an open-back clog-style shoe with a swirl midsole, indented or recessed line on the midsole, indented or recessed line on the heel, a combined or contoured midsole and outsole with an arch that creates a break between the outsole and the heel, a rubber outsole extending up from the bottom of the shoe to the front to form a bumper, and a design element on the heel midsole. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 235:14-237:24; Welch Dec. Ex. AQ. The third-party shoe New Balance 802 possesses all six elements of the Traveltime trade dress. Welch Dec. Ex. AQ at SKNY0099020. All claimed elements can be seen below.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 166.

178.  Easy Spirit was aware of the New Balance 802 shoe because of competitive shopping. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 237:6-14.

**Plaintiff's Response:**  Undisputed.

179.  From 2006 to 2016, New Balance sold REDACTED pairs of the New Balance 802. Welch Dec. Ex. AP at New Balance Dec. at 1; Welch Dec. Ex. AP at NEWB_000001-02.

**Plaintiff's Response:**  Undisputed.

180.  The third-party shoe New Balance Everlight Womens Slip On Mule possesses five of the six elements (1, 2, 3, 4, and 5) of the Traveltime trade dress. Welch Dec. Ex. AR at SKNY0099037. Easy Spirit's Rule 30(b)(6) designee Mr. Besanceney admits that the New Balance Everlight shoe is an open-back clog-style mule or clog-style shoe with a swirl midsole, a combined or contoured midsole and outsole with an arch that creates a break between the heel and outsole, and a rubber outsole extending up from the bottom of the shoe to the front to form a bumper. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 238:1-239:12; Welch Dec. Ex. AR. The claimed elements can be seen here.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 166

71

181.  The third-party shoe New Balance FuelCore NERGIZE Mule possesses four of the six elements (1, 2, 3, and 5) of the Traveltime trade dress. Welch Dec. Ex. AS. Easy Spirit considers the third-party company New Balance's "FuelCore Nergize Mule" shoe to be a competitor to the Traveltime. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 239:24-241:14; Welch Dec. Ex. AT. Easy Spirit's Rule 30(b)(6) designee Mr. Besanceney admits that the New Balance FuelCore Nergize Mule shoe is an open-back clog-style shoe with a rubber bumper extending from under the outsole of the shoe up to the front. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 241:15-24; Welch Dec. Ex. AT; Mr. Besanceney was aware of the New Balance FuelCore Nergize Mule shoe. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 241:6-11. The claimed elements can be seen here.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 166

182.  The third-party shoe Walmart Athletic Works Essential Slip On Athletic Shoe possesses all six elements of the Traveltime trade dress. Welch Dec. Ex. AU; Welch Dec. Ex. AV. Mr. Besanceney believes this shoe, the "Athletic Works Women's Athletic Works Essential

Slip On Athletic Shoe" looks like the Traveltime shoe. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 227:5-228:7; Welch Dec. Ex. AW; Welch Dec. Ex. AU; Welch Dec. Ex. AV. The claimed elements can be seen here.



**Plaintiff's Response:**  Undisputed.

183.  The Walmart Athletic Works Essential Slip On Athletic Shoe is currently for sale on walmart.com. Welch Dec. Ex. DA.

**Plaintiff's Response:**  Undisputed.

184.  Easy Spirit was aware of the Walmart Athletic Works Essential Slip On Athletic Shoe, but was unaware if of what, if any action was taken regarding that shoe. Welch Dec. Ex. K (DeZao Depo. Tr.) at 158:6-162:4.

**Plaintiff's Response:**  Disputed. Mr. DeZao testified that Easy Spirit considers the referenced shoe to be infringing on the TRAVELTIME trade dress. Accordingly, Easy Spirit contacted its legal counsel to notify counsel of the infringing shoe. Easy Spirit and legal counsel investigated the matter further through American Trademark Investigations, Inc. and attempted to determine the source of the shoe, where it came

from, where was it manufactured and who manufactured it. However, Easy Spirit was

unable to find out the manufacturer of the shoe and decided to focus its time and

resources on this action because the COMMUTE TIME shoe is considered to be a

much bigger issue for Easy Spirit – for example, the Walmart shoe did not appear to

have much inventory and did not appear to sell into brick and mortar stores or catalogs

like the COMMUTE TIME shoe. Ex. 4, DeZao  Dep. Tr. at 169:21-207:2; 208:19-25.

185.  The third-party shoe Walmart Athletic Works Women's Athletic Works Mule

Slip On Shoe possesses five of the six elements (1, 2, 3, 4, and 5) of the Traveltime trade dress.

Welch Dec. Ex. AX; Mr. Besanceney believes the only element in the third-party company

Walmart's "Athletic Works Women's Athletic Works Mule Slip On Shoe" that does not

resemble the Traveltime is the overlay on the upper. Welch Dec. Ex. J (Besanceney Depo. Tr.) at

229:18-25; Welch Dec. Ex. AX. The claimed elements can be seen here.

**Plaintiff's Response:**  Disputed. Based upon the images provided, it is difficult to

determine whether the referenced shoe possesses the same elements of, and/or infringes

upon, the TRAVELTIME trade dress. Nevertheless, Easy Spirit has been required to

focus its time and resources to this action against Skechers regarding the COMMUTE

TIME shoe. *See* Response to SF ¶ 184.



186.  The Walmart Athletic Works Women's Athletic Works Mule Slip On Shoe is currently for sale on Walmart.com. Welch Dec. Ex. AX.

**Plaintiff's Response:**  Undisputed.

187.  The third-party shoe Eastland Currant Clog possesses all six elements of the Traveltime trade dress. Welch Dec. Ex. AY at EASTL_000001. The claimed elements can be seen below.



**Plaintiff's Response:** Disputed. *See* Response to SF ¶ 166.

188.  Eastland has sold ███ pairs of the Eastland Currant Clog. Welch Dec. Ex. AY (Declaration Certifying Authenticity of Records from Eastland ("Eastland Dec.")) at 1; Welch Dec. Ex. AY at EASTL_000115.

**Plaintiff's Response:** Undisputed.

189.  The third-party shoe Eastland Shoe Cynthia Women's Clog possesses all six elements of the Traveltime trade dress. Welch Dec. Ex. AZ. The claimed elements can be seen below.



Eastland Cynthia Women's Clogs

**Plaintiff's Response:** Disputed. *See* Response to SF ¶ 166.

190. Eastland has sold REDACTED pairs of the Eastland Shoe Cynthia Women's Clog. Welch Dec. Ex. AY (Eastland Dec.) at 1; Welch Dec. Ex. AY at EASTL_000162.

**Plaintiff's Response:** Undisputed.

191. The third-party shoe Caleres Ryka Catalyst Mule possesses five of the six elements (1, 2, 3, 5, and 6) of the Traveltime trade dress. Welch Dec. Ex. BA. The claimed elements can be seen below.



**Plaintiff's Response:** Disputed. *See* Response to SF ¶ 166.

192. The third-party shoe Airwalk Etura Esque, which was for sale from at least 2003, possesses four of the six elements (1, 2, 3, and 5) of the Traveltime trade dress. Sadis Dec. at ¶ 59; Welch Dec. Ex. BB at SKNY0080842. The claimed elements can be seen below.



**Plaintiff's Response:** Disputed. *See* Response to SF ¶ 166.

193.  The third-party shoe Airwalk Clogger (style 23079), which was for sale from at least 1997, possesses four of the six elements (1, 2, 3, and 5) of the Traveltime trade dress. Sadis Dec. at ¶ 60; Welch Dec. Ex. BC at SKNY0080850. The claimed elements can be seen below.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 166.

194.  The third-party shoe Betula Clout (style 35143446) possesses four of the six elements (1, 2, 4, and 5) of the Traveltime trade dress. Sadis Dec. at ¶ 63; Welch Dec. Ex. DB. The claimed elements can be seen below.



**Plaintiff's Response:** Disputed. *See* Response to SF ¶ 166.

195.  The third-party shoe Easy Street Holly Women's Mule possesses five of the six elements (1, 2, 3, 4, and 5) of the Traveltime trade dress. Welch Dec. Ex. BD. The claimed elements can be seen below.



**Plaintiff's Response:** Disputed. *See* Response to SF ¶ 166.

196.  From 2012 to 2019, Easy Street/Charm Step sold REDACTED pairs of the Holly Women's Mule. Welch Dec. Ex. BE (Declaration Certifying Authenticity of Records from Easy Street/Charm Step ("Charm Dec.")) at 1; Welch Dec. Ex. BE at CHARM_000008.

**Plaintiff's Response:** Undisputed.

197.  The third-party shoe Easy Street Roam Women's Sport Mule possesses five of the six elements (1, 2, 3, 4, and 5) of the Traveltime trade dress. Welch Dec. Ex. BF. The claimed elements can be seen below.

**Easy Street Roam Women's Sport Mule**



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 166.

198.  Since 2019, Easy Street has sold ▉▉▉ pairs of the Easy Street Roam Women's Sport Mule. Welch Dec. Ex. BE (Charm Step Dec.) at 1; Welch Dec. Ex. BE at CHARM_000008.

**Plaintiff's Response:**  Undisputed.

199.  The third-party shoe Easy Street Sport Barbara Women's Print Clog possesses five of the six elements (1, 2, 3, 4, and 5) of the Traveltime trade dress. Welch Dec. Ex. BG. The claimed elements can be seen below.



**Plaintiff's Response:** Disputed. *See* Response to SF ¶ 166.

200.  From 2015 to 2019, Easy Street has sold [REDACTED] pairs of the Easy Street Sport Barbara Women's Print Clog. Welch Dec. Ex. BE (Charm Step Dec.) at 1; Welch Dec. Ex. BE at CHARM_000008.

**Plaintiff's Response:** Undisputed.

201.  The third-party shoe Clarks Clog (styles 540 771 16Y; 540 771 25Y), which was for sale from at least 2013, possesses five of the six elements (1, 2, 3, 4, and 5) of the Traveltime trade dress. Sadis Dec. at ¶ 58; Welch Dec. Ex. BH at SKNY0080806. The claimed elements can be seen below.



**Plaintiff's Response:** Disputed. *See* Response to SF ¶ 166.

202.  The third-party shoe Cole Haan Nike Air Mule possesses five of the six elements (1, 2, 4, 5, and 6) of the Traveltime trade dress. Welch Dec. Ex. BI. The claimed elements can be seen below.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 166.

203.  The third-party shoe Ecco Receptor possesses four of the six elements (1, 2, 3, and 5) of the Traveltime trade dress. Welch Dec. Ex. BJ at SKNY0080764. The claimed elements can be seen below.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 166.

204.  The Ecco Receptor was offered for sale at least in 2004 as part of the Ecco Spring/Summer 2004 – ReceptorTM Collection. Sadis Dec. at ¶ 52; Welch Dec. Ex. BJ at SKNY0080764.

**Plaintiff's Response:**  Undisputed.

205.  The third-party shoe Ecco Receptor Light Clog possesses five of the six elements (1, 2, 3, 4, and 5) of the Traveltime trade dress. Welch Dec. Ex. BK at SKNY0080863. The claimed elements can be seen below.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 166.

206.  The Ecco Receptor Light Clog was offered for sale at least in 2001 as part of the Ecco AW 2001 Collection. Sadis Dec. at ¶ 53; Welch Dec. Ex. BK at SKNY0080764.

**Plaintiff's Response:**  Undisputed.

207.  The third-party shoe Ecco Arizona Clog possesses five of the six elements (1, 2, 3, 4, and 5) of the Traveltime trade dress. Welch Dec. Ex. BL at SKNY0080827. The remaining elements can be seen below.



**Plaintiff's Response:** Disputed. *See* Response to SF ¶ 166.

208.  The Ecco Arizona Clog was offered for sale at least in 2003 as part of the Ecco Spring & Summer 2003 catalog. Sadis Dec. at ¶ 54; Welch Dec. Ex. BL at SKNY0080827.

**Plaintiff's Response:** Undisputed.

209.  The third-party shoe Ecco Soft Sneaker possesses five of the six elements (1, 2, 3, 4, and 5) of the Traveltime trade dress. Welch Dec. Ex. BM at SKNY0080830. The claimed elements can be seen below.



**Plaintiff's Response:** Disputed. *See* Response to SF ¶ 166.

210. The Ecco Soft Sneaker was offered for sale at least in 2001 as part of the Ecco S/S 2001 Collection. Sadis Dec. at ¶ 52; Welch Dec. Ex. BM at SKNY0080830.

**Plaintiff's Response:** Undisputed.

211. The third-party shoe Ecco Clog possesses five of the six elements (1, 2, 3, 4, and 5) of the Traveltime trade dress. Welch Dec. Ex. BN at SKNY0080794. The claimed elements can be seen below.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 166.

212.   The Ecco Clog was offered for sale at least in 2001 as part of the Ecco A/W 2001 catalog. Sadis Dec. at ¶ 56; Welch Dec. Ex. BN at SKNY0080794.

**Plaintiff's Response:**  Undisputed.

213.   The third-party shoe Merrell Encore Breeze 3 possesses four of the six elements (1, 2, 4, and 5) of the Traveltime trade dress. Welch Dec. Ex. BO at ESNY_000636. The claimed elements can be seen below.



[https://www.amazon.com/dp/B00E8FRE2K?
tag=atopdailyaatable-20]

## Merrell Women's Encore Breeze 3 Slip-On Shoe

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 166.

214.   The Merrell Encore Breeze 3 was offered for sale at least in 2019 as advertised in ATOPDAILY's "Top 10 Best Shoes for Standing All Day in 2019." Welch Dec. Ex. BO at ESNY_000636.

**Plaintiff's Response:**  Undisputed.

215.   The third-party shoe Merrell Cargo Slide five of the six elements (1, 2, 3, 4, and 5) of the Traveltime trade dress. Welch Dec. Ex. BP at SKNY0080781. The claimed elements can be seen below.



*Cargo Slide*

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 166.

216.  The Merrell Cargo Slide was offered for sale at least in 2001 as advertised in Jim Rennie's "What's New What's Hot" publication. Sadis Dec. at ¶ 57; Welch Dec. Ex. BP at SKNY0080781.

**Plaintiff's Response:**  Undisputed.

217.  The third-party shoe Propet Float-Away possesses four of the six elements (1, 2, 4, and 5) of the Traveltime trade dress. Welch Dec. Ex. BQ at SKNY0080867. Easy Spirit admits that the Propet Float-Away possesses element one: "a slip-on, clog-style upper."  Welch Dec. Ex. AK at Response No. 158. The remaining elements can be seen below.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 166.

218.  The Propet Float-Away was offered for sale at least in 2004 as part of B.A. Mason 100 Year Anniversary Catalog. Sadis Dec. at ¶ 61; Welch Dec. Ex. BQ at SKNY0080867.

**Plaintiff's Response:**  Undisputed.

219.  The third-party shoe Propet Women's Sports Leather Canyon Walker possesses four of the six elements (1, 2, 4, and 5) of the Traveltime trade dress. Welch Dec. Ex. BQ at SKNY0080868. The claimed elements can be seen below.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 166.

220.  The Propet Women's Sports Leather Canyon Walker was offered for sale at least in 2004 as part of B.A. Mason 100 Year Anniversary Catalog. Sadis Dec. at ¶ 62; Welch Dec. Ex. BQ at SKNY0080868.

**Plaintiff's Response:**  Undisputed.

221.  The third-party shoe Propet Women's Anna Clog possesses five of the six elements (1, 2, 3, 4, and 5) of the Traveltime trade dress. Welch Dec. Ex. BR (Besanceney

Exhibit 77). Mr. Besanceney believe the third-party company Propet's "Anna" shoe looks like the Traveltime. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 230:10-231:9; Welch Dec. Ex. BR. Mr. DeZao also stated the Propet Women's Anna Clog is "very similar" to the Traveltime shoe. Welch Dec. Ex. K (DeZao Depo. Tr.) at 169:21-171:7; Welch Dec. Ex. BR. The claimed elements can be seen below.



**Plaintiff's Response:**  Disputed. Based upon the images provided, it is difficult to determine whether the referenced shoe possesses the same elements of, and/or infringes upon, the TRAVELTIME trade dress. Nevertheless, Easy Spirit has been required to focus its time and resources to this action against Skechers regarding the COMMUTE TIME shoe. *See* Response to SF ¶ 184.

222.  The Propet Women's Anna Clog was offered for sale at least through Amazon's website earlier in 2020. Welch Dec. Ex. BR.

**Plaintiff's Response:**  Undisputed.

223.  The third-party shoe Walking Cradle Shoe possesses all elements of the Traveltime trade dress. Welch Dec. Ex. BS; Welch Dec. Ex. DC. Mr. Besanceney and Mr. DeZao, Senior VP of Product Design and Development for Easy Spirit, admit that this shoe is a

"knockoff of the Traveltime" and looks "remarkably like the Traveltime." and "aesthetically [] is virtually identical" to the Traveltime. Welch Dec. Ex. J (Besanceney Depo. Tr.) at 223:21-225:24; Welch Dec. Ex. K (DeZao Depo. Tr.) at 146:9-22; Welch Dec. Ex. BS. Mr. DeZao considers the Walking Cradle shoe, of which he was previously aware, a Traveltime copycat because it is "very, very similar to Traveltime, almost identical." Welch Dec. Ex. K (DeZao Depo. Tr.) at 24:21-25:2, 165:17-166:6; 168:2-10. The claimed elements can be seen below.



**Plaintiff's Response:**  Undisputed. Mr. DeZao also testified that when he investigated this shoe, he was unable to find additional inventory of it at that time. Ex. 4, DeZao Dep. Tr. at 147:4-10; 167:14-21-169:18.

224.  Tommy Hilfiger designed shoes in 2002, shown below that feature elements (1, 2, 3, 4, of the Traveltime trade dress. Welch Dec. Ex. B (Teteriatnikov Depo. Tr.) at 228:15-25; 229:1-7; Welch Dec. Ex. R.



**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 166.

225.  Easy Spirit has not initiated any litigations against any third party, except Skechers, for the manufacture, production, sale, or other promotion of shoes which allegedly infringe the claimed Traveltime trade dress as defined in Easy Spirit's Complaint. Welch Dec. Ex. AK at Response No. 194; Welch Dec. Ex. K (DeZao Depo. Tr.) at 212:4-7; Welch Dec. Ex. J (Besanceney Depo. Tr.) at 228:20-23.

> **Plaintiff's Response:**  Undisputed. Easy Spirit has been required to focus its time and resources to this action against Skechers regarding the COMMUTE TIME shoe. *See* Response to SF ¶ 184.

**I.   Third-Party Registration and Use of Similar Trademarks for Footwear**

226.  Mephisto S.A. Joint Stock Company owns a trademark registration for MEPHISTO TRAVEL'S on the Principal Register, covering footwear (Reg. No. 1,602,419). Welch Dec. Ex. BT.

> **Plaintiff's Response:**  Undisputed.

227.  Mephisto sells a collection of shoes for travel and walking, called the "Travel" collection. Welch Dec. Ex. BU.

**Plaintiff's Response:** Undisputed. However, there is no evidence that consumers of the TRAVELTIME and COMMUTE TIME shoes even know of Mephisto products.

228. Foot Supports International Limited owns a trademark registration for TRAVEL FEET on the Principal Register, covering insoles; insoles for footwear (Reg. No. 5,044,108). Welch Dec. Ex. BV.

**Plaintiff's Response:** Undisputed.

229. Consolidated Shoe Company, Inc. owns a trademark registration for TRAVEL LITE OTBT on the Principal Register, covering footwear (Reg. No. 5,118,467). Welch Dec. Ex. BW.

**Plaintiff's Response:** Undisputed.

230. Consolidated Shoe Company sells a collection of casual "athleisure" walking shoes for women, called "Travel Lite." Welch Dec. Ex. BX; Welch Dec. Ex. BY.

**Plaintiff's Response:** Undisputed. However, there is no evidence that consumers of the TRAVELTIME and COMMUTE TIME shoes even know of Consolidated Shoe Company products.

231. Propet Global Limited owns a registration for TRAVELACTIV on the Supplemental Register, covering footwear (Reg. No. 5,986,565). Welch Dec. Ex. BZ.

**Plaintiff's Response:** Undisputed.

232. Propet sells a clog-like slip-on shoe for women called the "TravelActive." Welch Dec. Ex. CA; Welch Dec. Ex. CB (Declaration Certifying Authenticity of Records from Propet ("Propet Dec.")) at 1; Welch Dec. Ex. CB at PROP_000008; PROP_000009; PROP_000070; PROP_000170; PROP_000177.

**Plaintiff's Response:** Disputed. The cited evidence does not provide sufficient evidence or support that the referenced shoe is still being sold or any other information regarding the shoe. Further, there is no evidence that consumers of the TRAVELTIME and COMMUTE TIME shoes even know of Propet products. Propet appears to offer specialty footwear for "hard-to-fit feet." (Saunders Decl. ¶ 52, Ex. 28).

233.  Propet sells a fashion sneaker for women called the "TravelActive." Welch Dec. Ex. CC; Welch Dec. Ex. CB (Propet Dec.) at 1; Welch Dec. Ex. CB at PROP_000008; PROP_000009; PROP_000068; PROP_000069.

**Plaintiff's Response:** Disputed. *See* Response to ¶ 232.

234.  Propet sells a fashion sneaker for women called the "TravelWalker." Welch Dec. Ex. CB (Propet Dec.) at 1; P Welch Dec. Ex. CB at PROP_000007; PROP_000071; PROP_000103; PROP_000171.

**Plaintiff's Response:** Disputed. *See* Response to ¶ 232.

235.  Propet sells a fashion sneaker for women called the "TravelFit." Welch Dec. Ex. CB (Propet Dec.) at 1; Welch Dec. Ex. CB at PROP_000004; PROP_000008; PROP_000009; PROP_000036; PROP_000065; PROP_000066; PROP_000067; PROP_000170; PROP_000252.

**Plaintiff's Response:** Disputed. *See* Response to ¶ 232

236.  Propet sells a clog-like slip-on shoe for women called the "TravelBound." Welch Dec. Ex. CB at (Propet Dec.) at 1; Welch Dec. Ex. CB at PROP_000102; PROP_000103; PROP_000172.

**Plaintiff's Response:** Disputed. *See* Response to ¶ 232

237.  Propet Global Limited owns a registration for TRAVELTEK on the Principal Register, covering outsole of footwear and sold as a component of the footwear; outsole for footwear (Reg. No. 5,329,705). Welch Dec. Ex. CD.

**Plaintiff's Response:**  Undisputed.

## J.  There is No Likelihood of Confusion

238.  Expert Jefferey A. Stec, Ph.D. ("Dr. Stec") conducted a double-blind internet survey to determine whether customers and potential customers confuse Skechers' Commute Time shoes as being sold by, sponsored or approved by, and/or having a business affiliation or connection to Easy Spirit. Welch Dec. Ex. CE (Stec Report) at pp. 6-7.

**Plaintiff's Response:**  Undisputed that Dr. Stec conducted a limited internet survey. Disputed that the internet survey is probative or accurately measured confusion or non-confusion of customers of the Skechers' Commute Time shoes or Easy Spirit TRAVELTIME shoes. The survey failed to approximate actual market conditions by surveying the full scope of channels where Commute Time and TRAVELTIME shoes are sold. For example, Commute Time and TRAVELTIME shoes have been and/or continue to be sold in department stores and other brick and mortar stores, including but not limited to Macy's department stores, Bealls department stores, Nordstrom Rack stores, Boscov's department stores and many independent shoe stores. (DeZao Decl. 8; Saunders Decl. ¶¶ 37-44, Exs. 13-20; . Further, the survey did not address catalog customers, which account for a large portion of Easy Spirit's customers. (DeZao Decl. ¶ 8; DeZao Dep. Tr. 216:1-9) Skechers intentionally sought divert customers of TRAVELTIME shoes to COMMUTE TIME shoes: "[Blair Catalog] want[s] to get the Commute Time package started and we are having trouble meeting the dates they are

requesting…. This is a big program for them and if it works could potentially replaced [*sic*] their million + Travel Time business." (Saunders Decl. ¶ 45, Ex. 21 at SKNY0000866.) Both TRAVELTIME shoes to COMMUTE TIME shoes are sold through the Blair Catalog. (Saunders Decl. ¶¶ 46, 47, Exs. 22-23.) The TRAVELTIME shoes to COMMUTE TIME shoes are also sold through televised home shopping channels such as HSN and QVC. (Saunders Decl. ¶¶ 48-51, Exs. 24-27.) The survey failed replicate real-world market conditions by including such brick and mortar store, catalog and televised home shopping customers, which more accurately serve the targeted demographic for the TRAVELTIME shoes to COMMUTE TIME shoes (women aged 40 to 60) that may not be internet saavy.

239.  Dr. Stec developed an internet survey to accurately represent the marketplace in which relevant consumers shop for and purchase Skechers' Commute Time shoes and Easy Spirit's Traveltime shoes. Welch Dec. Ex. CE (Stec Report) at pg. 7.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 238

240.  Dr. Stec developed the internet survey to test whether there was likely to be confusion in the marketplace by Skechers' use of "Commute Time" as the name for certain of its shoes. Welch Dec. Ex. CE (Stec Report) at pg. 7.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 238

241.  Dr. Stec identified the target population for this survey as U.S. residents that are customers and potential customers of women's clog shoes. Welch Dec. Ex. CE (Stec Report) at pg. 7.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 238

242.  Skechers' Commute Time shoes and Easy Spirit's Traveltime shoes are both offered to the target market of purchasers of women's shoes. Welch Dec. Ex. K (DeZao Depo. Tr.) at 149:6-9; Baruch Dec. at ¶ 23.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 238

243.  Easy Spirit's average customer is an adult woman with a college degree. Welch Dec. Ex. CF at ESNY_036233, ESNY_036235.

**Plaintiff's Response:**  Disputed. Easy Spirit's average customer includes more qualities. *See* Response to SF ¶ 238

244.  The survey members were only qualified to participate if they indicated that they are 18 years old or older, they do not suffer from color blindness, and in the last 12 months, they personally had shopped for or purchased women's clogs and/or in the next 12 months, they plan to shop for or purchase women's clogs. Welch Dec. Ex. CE (Stec Report) at pg. 8.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 238

245.  Dr. Stec determined that there is insufficient evidence to show that Skechers' use of Commute Time is likely to cause confusion in the marketplace. Stec Report at pg. 4.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 238

246.  Controlling for pre-existing beliefs, guesses, and other background noise that respondents may bring to the survey, 0.0% of respondents in Dr. Stec's likelihood of confusion survey believed Easy Spirit was the source of the Skechers' Commute Time shoes. Welch Dec. Ex. CE (Stec Report) at pg. 4, pg. 25; Welch Dec. Ex. CE (Stec Report) at Ex. 4.0.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 238

247.  0.0% of Dr. Stec's survey respondents believed Easy Spirit sponsored or approved Skechers' Commute Time. Welch Dec. Ex. CE (Stec Report) at pg. 4, pg. 26; Welch Dec. Ex. CE (Stec Report) at Ex. 4.0.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 238

248.  0.0% of Dr. Stec's survey respondents believed there was a business affiliation or connection between Skechers' Commute Time shoes and Easy Spirit. Welch Dec. Ex. CE (Stec Report) at pg. 4, pg. 27; Welch Dec. Ex. CE (Stec Report) at Ex. 4.0.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 238

249.  Dr. Stec determined the results of the likelihood of confusion survey demonstrate that customers and potential customers of Skechers' Commute Time shoes are not confused, mistaken, or deceived about Easy Spirit being the source or origin of Skechers' Commute Time shoes, about Easy Spirit sponsoring or approving Skechers' Commute Time shoes, or about Easy Spirit being affiliated with Skechers' Commute Time shoes. Welch Dec. Ex. CE (Stec Report) at pg. 4, pp. 25-27.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 238

250.  Easy Spirit did not provide any survey evidence on likelihood of confusion.

**Plaintiff's Response:**  Undisputed.

**K.  Actual Confusion**

251.  Easy Spirit has offered no evidence of any actual consumer confusion between its TRAVELTIME shoes and mark and Skechers' sale of shoes sold in connection with the mark COMMUTE TIME and associated shoe design. Welch Dec. Ex. CG at Response No. 5.

**Plaintiff's Response:**  Undisputed.

252.  Skechers is aware of no instances of confusion between the two shoes. Baruch Dec. at ¶ 24.

**Plaintiff's Response:**  Undisputed.

**K.  Consumer Surveys On Secondary Meaning**

253.  Dr. Stec conducted a double-blind internet survey to determine whether customers and potential customers associate the Traveltime Trade Dress with one source. Welch Dec. Ex. CE (Stec Report) at pp. 27-28.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 238.

254.  Dr. Stec identified the target population for this survey as U.S. residents that are customers and potential customers of women's clog shoes. Welch Dec. Ex. CE (Stec Report) at pg. 27.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 238.

255.  Dr. Stec developed an internet survey to accurately represent the marketplace in which relevant consumers shop for and purchase Easy Spirit's Traveltime shoes. Welch Dec. Ex. CE (Stec Report) at pg. 28.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 238.

256.  The survey members were only qualified to participate if they indicated that they are 18 years old or older, they do not suffer from color blindness, and in the last 12 months, they personally had shopped for or purchased women's clogs and/or in the next 12 months, they plan to shop for or purchase women's clogs. Welch Dec. Ex. CE (Stec Report) at pg. 28.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 238.

257.  Controlling for pre-exiting beliefs, guesses, and other background noise that respondents may bring to the survey, only 1.0% of respondents associated Easy Spirit's claimed

Traveltime trade dress with a single source. Welch Dec. Ex. CE (Stec Report) at pg. 4, 38; Welch Dec. Ex. CE (Stec Report) at Ex. 11.0.

> **Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 238.

258.  Easy Spirit has provided no consumer surveys on secondary meaning regarding the alleged Traveltime trade dress.

> **Plaintiff's Response:**  Undisputed.

**L.  Easy Spirit's Sales Figures**

259.  Easy Spirit claims to have sold more than 11 million pairs of the Traveltime. Compl., Dkt. 1 at ¶ 12.

> **Plaintiff's Response:**  Undisputed.

260.  For the period from 2017 to 2019, Easy Spirit has provided sales records showing a total of REDACTED alleged Traveltime shoes sold. Welch Dec. Ex. CH.

> **Plaintiff's Response:**  Undisputed.

261.  This spreadsheet shows REDACTED pairs sold in 2017. Welch Dec. Ex. CH; Welch Dec. Ex. N (Burris Depo Tr.) at 163:3-17, 167:16-20, 169:5-18.

> **Plaintiff's Response:**  Undisputed.

262.  This spreadsheet shows Easy Spirit sold REDACTED Traveltime shoes in Month 1 of 2018. Welch Dec. Ex. CH.

> **Plaintiff's Response:**  Undisputed.

263.  Easy Spirit has provided sales records from July 2010 to February 2020, showing only REDACTED alleged Traveltime units sold. Welch Dec. Ex. CI

> **Plaintiff's Response:**  Disputed. The referenced record does not appear to be accurate or created by Easy Spirit. Mr. Burris testified that Ex. CH was created by Easy Spirit's

system and reflect Easy Spirit sales to its retailer customers during the relevant time period. Welch Dec. Ex. N (Burris Depo Tr.) at 163:14-168:10.

264.   Easy Spirit has provided a separate record from October 2011 through December 2017, showing alleged Traveltime sales of REDACTED or REDACTED units sold. Welch Dec. Ex. CJ

**Plaintiff's Response:**  Disputed. The referenced record does not appear to be fully accurate. Mr. Burris further testified that the record does not account for full years of sales for 2011 and 2017. For example, the 2017 figure does not account for shipments carried out by Easy Spirit after Marc Fisher Footwear's acquisition of Easy Spirit. Welch Dec. Ex. N (Burris Depo. Tr.) at 442:9-445:24.

265.   ESNY_036878 was not created by an Easy Spirit employee, nor was it provided pursuant to a subpoena. Welch Dec. Ex. N (Burris Depo. Tr.) at 442:9-444:16; 448:8-12. Mr. Burris was unable to testify as to the system used to create the spreadsheet or corroborate the underlying data. Welch Dec. Ex. N (Burris Depo. Tr.) at 447:8-449:10.

**Plaintiff's Response:**  Disputed. Mr. Burris testified that the document was likely created by the Easy Spirit brand predecessor, Nine West Holdings, which is not Premiere Brands. Welch Dec. Ex. N (Burris Depo. Tr.) at 444:9-445:25. Mr. Burris testified further testified that the document was created from "SAP," Premiere Brands' sales system. This information was provided pursuant to Marc Fisher Footwear's request and right to ask for information it holds or it owned that has to do with the Easy Spirit assets. *Id.* 447:15-449:1.

266.   Other Easy Spirit witnesses acknowledged that they were unable to access sales figures from prior to 2017. Welch Dec. Ex. K (DeZao Depo Tr.) at 71:16-73:3.

**Plaintiff's Response:**  Undisputed.

**M. Easy Spirit's Media Coverage**

267.  Easy Spirit has produced thirty-six articles from third parties regarding the Traveltime. *See, e.g.* Welch Dec. Ex. CK at ESNY_000618-ESNY_000619; Welch Dec. Ex. CL at ESNY_033474-ESNY_033476.

> **Plaintiff's Response:**  Disputed. Easy Spirit found additional substantial unsolicited media attention. For example, in August 2017, Footwear News, the leading industry publication, hailed the TRAVELTIME shoe as "**iconic**" and a "**style that continues to resonate with consumers across the board**." (Saunders Decl. ¶ 53, Ex. 29 at p. 3.) Last year, the coveted O, The Oprah Magazine, featured the TRAVELTIME shoe in two of its articles. (Saunders Decl. ¶ 54, Ex. 31 at ESNY_033565, ESNY_033570; Saunders Decl. ¶ 55, Ex. 32 at ESNY_033583.) The WalkJogRun site referred to the TRAVELTIME shoe as "**legendary**." (Saunders Decl. ¶ 56, Ex. 33 at p. 8.) Most recently, in July 2020, Meredith Corporation's Health Magazine praised the TRAVELTIME shoe's "**unconventional design**" and "**unexpected style with 7,0000 perfect reviews**" on Amazon. (Saunders Decl. ¶ 57, Ex. 34 at p.1.)  In June 2020, Travel + Leisure, a leading travel magazine, also recognized the TRAVELTIME shoe as the "**best backless option**" for slip-on sneakers and the shoe's significant fan base. (Saunders Decl. ¶ 58 Saunders Decl. ¶ 58, Ex. 35 at pp. 2, 7.)

268.  Of these thirty-six articles, only four were published before Skechers launched its Skechers Commute shoe line in early 2018. Welch Dec. Ex. CM; Welch Dec. Ex. CN at ESNY_033837; Welch Dec. Ex. CO at ESNY_033519-ESNY_033520; Welch Dec. Ex. CP at ESNY_033447-ESNY_033448.

> **Plaintiff's Response:**  Disputed. For example, in August 2017, Footwear News, the
> leading industry publication, hailed the TRAVELTIME shoe as "**iconic**" and a "**style**
> **that continues to resonate with consumers across the board**." (Ex. 29 at p. 3.)

269.  None of these four articles focus on or even mention any elements of Easy Spirit's
claimed trade dress. Welch Dec. Ex. CM; Welch Dec. Ex. CN at ESNY_033837; Welch Dec.
Ex. CO at ESNY_033519-ESNY_033520; Welch Dec. Ex. CP at ESNY_033447-
ESNY_033448.

> **Plaintiff's Response:**  Disputed. The substantial unsolicited media articles praise the
> distinct and unique overall appearance of the TRAVELTIME shoe and consumer
> recognition of the overall design. *See* Response to SF ¶ 267.

270.  All four third-party articles focus primarily on the comfort of the Traveltime
shoes and their ability to easily slip on and off. Welch Dec. Ex. CM; Welch Dec. Ex. CN at
ESNY_033837; Welch Dec. Ex. CO at ESNY_033519-ESNY_033520; Welch Dec. Ex. CP at
ESNY_033447-ESNY_033448.

> **Plaintiff's Response:**  Disputed. As Skechers has pointed out, there are numerous
> Skechers and 3rd-party slip-on, clog-style shoes on the market, including those in the
> comfort category. However, these articles specifically chose to feature the
> TRAVELTIME shoe due to its design, popularity and consumer recognition. (*See* Ex.
> 29 at p. 3 (recognizing that the TRAVELTIME shoe is both easy-to-wear and casual,
> but also "iconic" and a "brand mainstay.").) Easy Spirit is known to innovate and
> design footwear that is light, soft, comfortable, easy to wear, but also stylish. (Ex. 2,
> DeZao Decl. ¶ 3.)

271.  One article is part of a "Podiatry Shoe Review," in which a podiatrist discusses recommended shoes for people with podiatric problems, titled, "Easy Spirit Traveltime – Comfort Shoe For People Who Have Difficulty Reaching Their Feet." Welch Dec. Ex. CM.

**Plaintiff's Response:** Disputed. The TRAVELTIME shoe is not a medical product or targeted for medical use. As Skechers has pointed out, there are numerous Skechers and 3rd-party slip-on, clog-style shoes on the market, including those in the comfort category. However, these articles specifically chose to feature the TRAVELTIME shoe due to its design, popularity and consumer recognition. (*See* Ex. 29 at p. 3 (recognizing that the TRAVELTIME shoe is both easy-to-wear and casual, but also "iconic" and a "brand mainstay.").)

272.  The second article is titled, "Your votes are in: the 30 most comfortable shoes for teachers." The section of the article that references the Traveltime is under a heading titled "Easy Spirit" and states, "Sneakers are great, but if you want to pull off a more professional look with the same level of comfort (or more!) then Easy Sprit Traveltime mules and Zero Gravity shoes are a good bet." Welch Dec. Ex. CN.

**Plaintiff's Response:** Disputed. *See* Response to SF ¶ 270.

273.  The title of the third article is "Top 10 Best Walking Shoes For Women In 2017 Reviewed." Welch Dec. Ex. CO. The article describes the Traveltime as offering "wonderful foot comfort for any walking woman." Welch Dec. Ex. CO at ESNY_033519.

**Plaintiff's Response:** Disputed. *See* Response to SF ¶ 270.

274.  The fourth article is titled "Best Shoes for Seniors," and states that the Traveltime is comfortable and a "suitable choice" for people who have trouble bending over to tie their shoelaces. Welch Dec. Ex. CP at ESNY_033447.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 270.

275.  The "Best Shoes for Seniors" article also highlights that the outsole is "excellent when you walk in rain and tile because of the good traction." Welch Dec. Ex. CP at ESNY_033447.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶ 270

276.  Only one of these articles reference the appearance of the Traveltime at all. Welch Dec. Ex. CN.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶¶ 267, 270.

277.  The AW article, from approximately the Fall of 2015, states the Traveltime has a "professional" look, but likewise does not point to or identify any feature or element of the shoes' midsole or outsole, or other trade dress elements. Welch Dec. Ex. CN at ESNY_033837.

**Plaintiff's Response:**  Disputed. *See* Response to SF ¶¶ 267, 270.

278.  The remaining thirty-one articles either bear no date to determine their relevancy or were published during 2019 or 2020. *See, e.g.* Welch Dec. Ex. CQ at ESNY_000519 (NurseTheory article download date Oct. 10, 2019); *see also* Welch Dec. Ex. CK at ESNY_000618-ESNY_000619 (BestShoesRated article dated Jan. 8, 2019); Welch Dec. Ex. CL at ESNY_033474-ESNY_033476 (Footwears Geek article dated Feb. 2, 2020).

**Plaintiff's Response:**  Disputed. Regardless of date, the substantial unsolicited media attention shows consumer recognition of the TRAVELTIME shoe. As Skechers has pointed out, there are numerous Skechers and 3rd-party slip-on, clog-style shoes on the market, including those in the comfort category. However, these articles specifically chose to feature the TRAVELTIME shoe due to its design, popularity and consumer

recognition. (*See* Ex. 29 at p. 3 (recognizing that the TRAVELTIME shoe is both easy-to-wear and casual, but also "iconic" and a "brand mainstay.").)

**N.  Easy Spirit's Advertising**

279.  Easy Spirit's Rule 30(b)(6) designee on advertising and marketing issues, Shanya Perera, admitted that Easy Spirit cannot "provide an accurate number in distribution [of prior Traveltime advertisements] because we only have pieces of creative on our site as opposed to like a media or co-op plans." Welch Dec. Ex. CR (Deposition Transcript of Shanya Perera ("Perera Depo. Tr.")) at 107:24-108:16.

> **Plaintiff's Response:**  Disputed. Ms. Perera's response was to a question with regard to one advertisement. Welch Dec. Ex. CR (Perera Depo. Tr.) at 107:24-108:16.

280.  In relation to a previous Traveltime advertising campaign in 2006 or 2007, Easy Spirit cannot provide any data regarding to whom or where the previous Traveltime advertisements were distributed. Welch Dec. Ex. CR (Perera Depo. Tr.) at 104:20-109:6. Easy Spirit also cannot determine how much it spent on this campaign, the target market for this campaign, the research that went into creating the campaign, nor the value or sales that were generated from this campaign. Welch Dec. Ex. CR (Perera Depo. Tr.) at 109:11-14; 110:3-15.

> **Plaintiff's Response:**  Undisputed. The advertising campaign was created and distributed by the Easy Spirit brand predecessor.

281.  Easy Spirit does not have "any access to media plans" for the Traveltime before 2017. Welch Dec. Ex. CR (Perera Depo. Tr.) at 134:2-136:8.

> **Plaintiff's Response:**  Undisputed. Media plans prior to the Easy Spirit acquisition by Marc Fisher Footwear were created and distributed by the Easy Spirit brand predecessor.

282.  Easy Spirit does not have any data as to how many mailers were sent out for the Traveltime shoe before 2017. Welch Dec. Ex. CR (Perera Depo. Tr.) at 139:14-22.

> **Plaintiff's Response:**  Undisputed. Mailers prior to the Easy Spirit acquisition by Marc Fisher Footwear were created and distributed by the Easy Spirit brand predecessor.

283.  Easy Spirit does not "have any information from back when [prior owners of the Easy Spirit brand] were doing the marketing of this." Welch Dec. Ex. CR (Perera Depo. Tr.) at 144:9-24; 147:18-148:1 (referring to marketing of Traveltime through print advertisements).

> **Plaintiff's Response:**  Undisputed. The print advertisements prior to the Easy Spirit acquisition by Marc Fisher Footwear were created and distributed by the Easy Spirit brand predecessor.

284.  Easy Spirit currently does not track how much money is spent on the Traveltime platform of Traveltime family marketing and advertising expenses, for promotions such as emails, and there is no way for Easy Spirit to delineate within Easy Spirit brand level expenses how much cost went into advertising the Traveltime family of shoes. Welch Dec. Ex. CR (Perera Depo. Tr.) at 120:25-124:9.

> **Plaintiff's Response:**  Disputed. Certain advertising expenses designated to "TRAVELTIME COSTS" are shown in Welch Dec. Ex. CS. *See also*, Response to ¶ 287. In addition,  Easy Spirit has data regarding marketing and advertising expenses for the Easy Spirit brand. For example, between 2017 and 2019, Easy Spirit spent approximately REDACTED on marketing and advertising for the brand. (Saunders Decl. ¶ 60, Ex. 36 at ESNY_036285.) Further, in Spring 2018, Easy Spirit underwent a relaunch of the brand that caused a noticeable change in sales. (Saunders Decl. ¶ 61, Ex. 37, Deposition Transcript of Shanya Perera ("Perera Dep. Tr.") at 149:16-150.25.

The relaunch in 2018 alone cost approximately REDACTED . (Saunders Decl. ¶ 62, Ex. 38 at p. 2 (ESNY_033061).) Since the TRAVELTIME is Easy Spirit's best-selling product, money, time and effort was put in to feature the TRAVELTIME in the marketing and advertisements of the relaunch. For example, Ms. Perera testified that the relaunch campaign included subway and airport advertisements that exclusively featured the TRAVELTIME shoe. (Ex. 37, Perera Dep. Tr. 182:5-188:5; Ex. 38 p. 9 (ESNY_033068).) *See also*, Ex. 2 of Complaint for images of the TRAVELTIME on the relaunched Easy Spirit website; Ex. 3 of Complaint for images of the TRAVELTIME also used for a national campaign.

285.  Easy Spirit has no data showing how much was spent on recent online advertising campaigns for the Traveltime family. Welch Dec. Ex. CR (Perera Depo. Tr.) at 221:12-19.

**Plaintiff's Response:**  Disputed. Certain advertising expenses designated to "TRAVELTIME COSTS" are showing in Welch Dec. Ex. CS. *See also*, Response to ¶ 287

286.  Easy Spirit no longer does print advertising, other than in the magazine, Footwear News. Welch Dec. Ex. CR (Perera Depo. Tr.) at 146:15-147:2.

**Plaintiff's Response:**  Undisputed.

287.  Easy Spirit's sole claimed advertising expenses designated to "TRAVELTIME COSTS" from REDACTED

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Welch Dec. Ex. CS.

**Plaintiff's Response:**  Undisputed.

288.  Easy Spirit's own vendors estimated Skechers' advertising spend in REDACTED

▆▆▆▆▆▆▆ just in the United States. Welch Dec. Ex. CT at ESNY_033086.

**Plaintiff's Response:**  Disputed. The author of the referenced document implies the figures are not accurate, "Number need to be taken with a grain of salt as there are no reporting measures for paid search and partnerships." Welch Dec. Ex. CT at ESNY_033086.

289.  Many of the provided Easy Spirit advertisements do not depict the claimed trade dress elements. *See, e.g.:*

- Welch Dec. Ex. CU at ESNY_000001 (in which the claimed trade dress elements swirl midsole, break in the arch, indented lines on the midsole, and four circles on the midsole at the heel are not visible):



- Welch Dec. Ex. CU at ESNY_000031 (in which no details of the shoe – including the claimed trade dress elements, such as the swirl midsole, break in the arch, indented lines on the midsole, or four circles on the midsole at the heel – are visible):



traveltime

- Welch Dec. Ex. CV (in which the claimed trade dress elements swirl midsole, break in the arch, and indented lines on the midsole are not visible):



- Welch Dec. Ex. CW (in which the claimed trade dress elements swirl midsole, break in the arch, indented lines on the midsole, and four circles on the midsole at the heel are not visible):



- Welch Dec. Ex. CX (showing Easy Spirit's "iconic style" but without depicting any of the claimed trade dress elements, such as the swirl midsole, break in the arch, indented lines on the midsole, or four circles on the midsole at the heel):



**Plaintiff's Response:**  Disputed. The cited advertisements in SF ¶ 289 are not a representative sample of Plaintiff's advertisements. Plaintiff's advertisements often show the overall trade dress of the TRAVELTIME shoe. *See* Exs. 1-5 to Complaint.

290.  Many of the provided advertisements feature other source indicators such as the TRAVELTIME word mark or house mark EASY SPIRIT:

- Welch Dec. Ex. CU at ESNY_000001:



- Welch Dec. Ex. CU at ESNY_000007:



- Welch Dec. Ex. CU at ESNY_000036:



**Plaintiff's Response:** Undisputed.

**SECTION II: <u>EASY SPIRIT'S STATEMENT OF ADDITIONAL FACTS</u>**

291.    Easy Spirit designs and sells women's comfort footwear. (Ex. 2, DeZao Decl. ¶ 3.)

292.    Founded in 1987, Easy Spirit has developed a reputation in the footwear industry and among consumers as a seller of ultra-comfortable quality footwear for life's everyday activities, including work, leisure and staying active. (Ex. 2, DeZao Decl. ¶ 3.)

293.    In or around 2004, Easy Spirit introduced the TRAVELTIME shoe. (Ex. 2, DeZao Decl. ¶ 4.)

294.    By 2006, it became the #1 selling shoe of 2006 according to department store data provided by the NPD Group, Inc. (Ex. 2, DeZao Decl. ¶ 11.)

295.    Since 2006, the TRAVELTIME shoe has been Easy Spirit's best-selling product and consistent number one shoe style every year since its launch. (Ex. 2, DeZao Decl. ¶ 12.)

296.    In August 2017, Footwear News, the leading industry publication, described the TRAVELTIME shoe as "iconic" and a "style that continues to resonate with consumers across the board."  (Saunders Decl. ¶ 53, Ex. 29 at p. 3.)

297.    In 2019, The Oprah Magazine, featured the TRAVELTIME shoe in two of its articles. (Saunders Decl. ¶ 54, Ex. 30 at ESNY_033565, ESNY_033570; Saunders Decl. ¶ 55, Ex. 31 at ESNY_033583.)

298.    The WalkJogRun site referred to the TRAVELTIME shoe as "**legendary**." (Saunders Decl. ¶ 56, Ex. 32 at p. 8.)

299.    In July 2020, Meredith Corporation's Health Magazine praised the TRAVELTIME shoe's "**unconventional design**" and "**unexpected style with 7,0000 perfect reviews**" on Amazon. (Saunders Decl. ¶ 57Ex. 33 at p.1.)

300.    In June 2020, Travel + Leisure, a leading travel magazine, also recognized the TRAVELTIME shoe as the "**best backless option**" for slip-on sneakers and the shoe's significant fan base. (Saunders Decl. ¶ 58, Ex. 34 at pp. 2, 7.)

301.    In or around 2017, prior to designing the COMMUTE shoe, Skechers was aware of the Easy Spirit brand in the footwear industry. (Saunders Decl. ¶ 33, Ex. 9, Hobbs Dep. Tr. at 99:9-13; Saunders Decl. ¶ 2, Ex. 3, Greenberg Dep. Tr. at 15:17-19.)

302.    In or around 2017, prior to designing the COMMUTE shoe, Skechers was aware of the Easy Spirit brand in the footwear industry. (Ex. 9, Hobbs Dep. Tr. at 99:9-13; Ex. 3, Greenberg Dep. Tr. at 15:17-19.)

303.    In or around 2017, Skechers purchased an Easy Spirit TRAVELTIME shoe and sent it to its factory with instructions to construct the Skechers midsole and outsole with the "same exact" width and height dimensions of the TRAVELTIME shoe midsole and outsole. (Saunders Decl. ¶ 10, Ex. 6, Deposition Transcript of Savva Teteriatnikov ("Teteriatnikov Dep. Tr.") at 112:17-113:17; 117:24-118:25; 127:22-128:22; 136:22-138:6; 139:19-144:14; Saunders Decl. ¶ 11, Ex. 6A (Teteriatnikov Dep. Ex. 5) at SK0090078-80;  Saunders Decl. ¶ 12, Ex. 6B (Teteriatnikov Dep. Ex. 6) at SKNY0090017-19; Saunders Decl. ¶ 13, Ex. 6C (Teteriatnikov Dep. Ex. 7) at SKNY0090076-77; Saunders Decl. ¶ 14, Ex. 6D (Teteriatnikov Dep. Ex. 8) at SKNY0063258-61.)

304.    After receiving a prototype of the midsole and outsole constructed by the factory referenced in Counter-SF ¶ 303, above, Skechers' designer of the COMMUTE shoe compared the prototype with an actual Easy Spirit TRAVELTIME shoe to confirm that the width and height dimensions of the midsole and outsole were exactly the same. (Ex. 6, Teteriatnikov Dep. Tr. at 202:7-204:25; 205:14-206:1; Saunders Decl. ¶ 15, Ex. 6E (Teteriatnikov Dep. Ex. 22) at SKNY0089975-81.)

305.    In response to Easy Spirit's requests for documents in this action, Skechers did not produce any documents that concerned the design of the upper for the COMMUTE shoe.

306.    The width and height dimensions of the COMMUTE TIME shoe midsole and outsole are the same as the TRAVELTIME shoe midsole and outsole. (Ex. 6, Teteriatnikov Dep. Tr. at 202:7-204:25; 205:14-206:1; Ex. 6E (Teteriatnikov Dep. Ex. 22) at SKNY0089975-81)

307.   Skechers received information from a Beallls buyer about the best-selling prints and materials for uppers of TRAVELTIME shoes that were sold at Bealls. (Saunders Decl. ¶ 20, Ex. 8B (Baruch Dep. Ex.14) at SKNY0014686); Saunders Decl. ¶ 19, Ex. 8A (Baruch Dep. Ex.12) at SKNY0001323, SKNY0001323-1327).)

308.   Skechers used information it received from a Bealls buyer about prints and materials on TRAVELTIME shoe uppers to design uppers for COMMUTE or COMMUTE TIME shoes. (Ex. 8B (Baruch Dep. Ex.14) at SKNY0014686; Ex. 8A (Baruch Dep. Ex.12) at SKNY0001323, SKNY0001323-1327).)

309.   The Skechers shoe with a palm tree print, shown below (the "Skechers Palm Tree Shoe"), was designed after it viewed the TRAVELTIME shoe, a representative example also below. (Saunders Decl. ¶ 25, Ex. 8G (Baruch Dep. Ex. 22); Saunders Decl. ¶ 26, Ex. 8H (Baruch Dep. Ex. 23); Ex. 8B (Baruch Dep. Ex.14) at SKNY0014686; Saunders Decl. ¶ 18, Ex. 8, Baruch Dep. Tr. at 165:17-167:2.)

| Easy Spirit | Skechers |
| --- | --- |



310.   The Ms. Baruch approved the Skechers Palm Tree Shoe for sale. (Ex. 8, Baruch Dep. Tr. at 172:19-173:10.)

311.   The Skechers shoe with a metallic or glitter material, shown below, was designed after it viewed the TRAVELTIME shoe, representative examples also shown below. (Ex. 8A

(Baruch Dep. Ex.12) at SKNY0001323, SKNY0001323-1327; Ex. 8, Baruch Dep. Tr. at 165:17-167:2.)

| Easy Spirit | Skechers |
|---|---|
|  | |

312.    The Skechers shoe with a leopard print, shown below (the "Skechers Leopard Shoe"), was designed after it viewed the TRAVELTIME shoe, a representative example also below. (Saunders Decl. ¶ 29, Ex. 8K (Baruch Dep. 26); Saunders Decl. ¶ 30, Ex. 8L (Baruch Dep. 27); Ex. 8, Baruch Dep. Tr. at 165:17-167:2.)

| Easy Spirit | Skechers |
|:---:|:---:|



313.    The Ms. Baruch approved the Skechers Leopard Shoe for sale. (Ex. 8, Baruch Dep. Tr. at 178:8-20.)

314.    The Skechers shoe with a flamingos print, shown below, was designed after it viewed the TRAVELTIME shoe, a representative example also below. (Ex. 8A (Baruch Dep. Ex.12) at SKNY0001323, SKNY0001323-1327; Ex. 8, Baruch Dep. Tr. at 165:17-167:2.)

| Easy Spirit | Skechers |
|:---:|:---:|



315.    The Skechers shoe with a mesh material, shown below (the "Skechers Mesh Shoe"), was designed after it viewed a TRAVELTIME shoe with mesh material, a representative

example also below. (Saunders Decl. ¶ 27, Ex. 8I (Baruch Dep Ex. 24); Saunders Decl. ¶ 28, Ex. 8J (Baruch Dep Ex. 25); Ex. 8, Baruch Dep. Tr. at 165:17-167:2.)

| Easy Spirit | Skechers |
|---|---|



316.    The Ms. Baruch approved the Skechers Mesh Shoe for sale. (Ex. 8, Baruch Dep. Tr. at 176:9-177:16.)

317.    The Skechers shoe with a pineapple print, shown below (the "Skechers Pineapple Shoe"), was designed after it viewed the TRAVELTIME shoe, a representative example also below. (Ex. 8B (Baruch Dep. Ex.14) at SKNY0014686; Saunders Decl. ¶ 27, Ex. 8D (Baruch Dep. Ex.19); Saunders Decl. ¶ 16, Ex. 6F (Teteriatnikov Dep. Ex. 33); Ex. 8, Baruch Dep. Tr. at 165:17-167:2.)

| Easy Spirit | Skechers |
|---|---|



318.    The Ms. Baruch approved the Skechers Pineapple Shoe for sale. (Ex. 8, Baruch Dep. Tr. at 167:3-168:20.)

319.    The Skechers shoe with an anchors print, shown below (the "Skechers Anchor Shoe"), was designed after it viewed the TRAVELTIME shoe, a representative example also below. (Ex. 8E (Saunders Decl. ¶ 23, Baruch Dep. Ex. 20); Saunders Decl. ¶ 24, Ex. 8E (Baruch Dep. Ex. 20); Ex. 8, Baruch Dep. Tr. at 165:17-167:2.)



320.    The Ms. Baruch approved the Skechers Anchors Shoe for sale. (Ex. 8, Baruch Dep. Tr. at 170:16-171:15.)

321.     The Skechers shoe with a suede-like material and faux fur trim, shown below (the "Skechers Fur Shoe"), was designed after it viewed the TRAVELTIME shoe, a representative example also below. (Saunders Decl. ¶ 31, Ex. 8M (Baruch Dep. Ex. 30); Saunders Decl. ¶ 32, Ex. 8N (Baruch Dep. Ex. 31); Ex. 8, Baruch Dep. Tr. at 165:17-167:2.)



| Easy Spirit | Skechers |
|---|---|

322.     The Ms. Baruch approved the Skechers Fur Shoe for sale. (Ex. 8, Baruch Dep. Tr. at 184:2-17).

323.     The Skechers poster, shown below, was designed after it viewed the Easy Spirit Traveltime poster, also shown below. (Saunders Decl. ¶ 34, Ex.10 at SKNY0008555; Saunders Decl. ¶ 35, Ex. 11 at SKNY0000015.)

| Easy Spirit | Skechers |
|---|---|
|  | |

324.    In June 2019, Skechers started shipping newer COMMUTE TIME shoe styles in a shoe box with the below lid (the "Commute Time Box"). (Skechers MSJ Declaration of Jessica Baruch ("Baruch Dec.") at Baruch ¶ 13; Skechers MSJ, Ex. I (SKNY0058893.))



325.     Each side of the lid of the Commute Time Box states "Commute Time." (Skechers MSJ Declaration of Jessica Baruch ("Baruch Dec.") at Baruch ¶ 13; Skechers MSJ, Ex. I.).

326.     The words "Commute Time" are written in a font on the Commute Time Box that is approximately twice the size of the font of the house brand. (Skechers MSJ Declaration of Jessica Baruch ("Baruch Dec.") at Baruch ¶ 13; Skechers MSJ, Ex. I.)

327.     The words "Commute Time" appear at least four times on the Commute Time Box. (Skechers MSJ Declaration of Jessica Baruch ("Baruch Dec.") at Baruch ¶ 13; Skechers MSJ, Ex. I.)

328.     Skechers changed the name of the Skechers Commute shoe to the Skechers Commute Time shoe after the Skechers Commute shoe had already been shipped to customers. (Saunders Decl. ¶ 3, Ex. 3A (Greenberg Ex. 1, Hobbs Dep. Ex. 46) at SKNY0045203.)

329.     The change of the name of the Skechers Commute shoe to the Skechers Commute Time shoe was directed by Skechers' CEO, Robert Greenberg. (Ex. 3A (Greenberg Ex. 1, Hobbs Dep. Ex. 46; Ex. 3C (Greenberg Dep. Ex. 3); Ex. 3, Greenberg Dep. Tr. at 25:14-26:22.)

330.     New packaging for the Skechers Commute Time shoe was directed by Skechers' CEO, Robert Greenberg. (Ex. 3C(Greenberg Dep. Ex. 3 at SKNY0131153-4.)

331.     Skechers emails with the subject "Memo from Robert" were directed to be sent by Skechers' CEO, Robert Greenberg. (Ex. 3, Greenberg Dep. Tr. at 37:22-39:5)

332.     When confronted with the email in which he called the COMMUTE TIME shoes the "travel-time looking product," he suggested that someone else may have wrote it without his involvement despite the subject, "Memo from Robert." (Ex. 3, Greenberg Dep. at 41:19-24.) When asked why his assistant would send the "Memo from Robert" if it were not actually from him, he responded, "I – I really don't know." (Ex. 3 (Greenberg Dep. at 45:21-24).)

333.     Mr. Greenberg directed an email with the subject line, "Memo from Robert," to be sent that says, "Take me in the Modern Comfort room, I want to talk to you about some of the

travel-time looking product." (Saunders Decl. ¶ 7, Ex. 3E (Greenberg Dep., Ex. 5) at SKNY0099848.)

334.    When Mr. Greenberg was questioned about Exhibit 5 of his deposition, Mr. Greenberg testified that the "travel-time looking product" refers to the Commute Time shoe. (Ex. 3, Greenberg Dep. Tr. at 49:11-50:13.)

335.    Mr. Greenberg directed an email with the subject line, "Memo from Robert," to be sent that says, "A nice idea for the "Travel Time" CVs that you're doing is that you do it also in a lace-up version also.  We sold lace-up Energys way back, slip-ons and people loved them because you could adjust the fit.  And there's your way to jump all over them and get 'em." (Ex. 3D (Greenberg Dep. Ex. 4) at SKNY0099878.)

336.    When Mr. Greenberg was questioned about Exhibit 4 of his deposition, Mr. Greenberg testified that "them" is "somebody we sell shoes to" and did not know what "get 'em" meant. (Ex. 3, Greenberg Dep. Tr. at 44:13-21; 45:1-9.)

337.    Mr. Greenberg directed an email with the subject line, "Memo from Robert," to be sent that says, "The #49359 is a huge hit, why don't you create an open back version of that. I'm sure it would give Travel Time a run for its money." (Saunders Decl. ¶ 17, Ex. 7 at SKNY0004194)

338.    Mr. Greenberg was deposed on August 19, 2020, whereby Mr. Greenberg testified that he did not know of any reason why he could not give complete and accurate testimony and there was no medical condition or medication that would affect his memory. (Ex. 3, Greenberg Dep. at 6:17-24).)

339.    Melissa Hobbs is not an attorney, does not have any training in trademark law and does not even know the legal test for trademark infringement. (Ex. 9; Hobbs Dep. Tr. at 226:3-227:1.)

340.    Melissa Hobbs, the Senior Product Manager who oversees the COMMUTE TIME product day-to-day, testified during her deposition that she alone checks new names for shoes in

her division by using a website and that she does not submit proposed new names to the legal department for clearance. (Ex. 9, Hobbs Dep. Tr. at 14:3-9, 42:13-16, 42:5-24, 44:13-16.)

341. Melissa Hobbs changed her testimony in Counter-SF 339 after her deposition that she asked the legal department to approve the name option COMMUTE, COMMUTERS, AND COMMUTE TIME. (Ex. 9, Hobbs Dep. Errata at 232:6-9.)

342. Mr. Greenberg testified during his deposition that new names for shoes are approved by Skecher's legal department. (Ex. 3, Greenberg Dep. Tr. at 36:14-16.)

343. Melissa Hobbs testified during her deposition that Mr. Greenberg becomes involved in the process of approving names for important shoes. (Ex. 9, Hobbs Dep. Tr. at 102:20-103:16.)

344. The COMMUTE TIME shoe was included in a list of "key initiatives" for the Modern Comfort line, which is a a company designation for a specific shoe that it wants to sell and believes will sell well. (Ex. 8, Baruch Dep. Tr. at 160:7-165:25; Saunders Decl. ¶ 21, Ex. 8C at SKNY0014714, SKNY0014723-25, SKNY0014731-33, SKNY0014755, SKNY0014758.)

345. Mr. Greenberg testified during his deposition that he is not aware of the name selection process for shoes at Skechers. (Ex. 3, Greenberg Dep. Tr. at 36:17-24; Greenberg Dep. Tr. at 37:16-19).

346. Mr. Greenberg has been leading Skechers as its CEO since 1992. (Greenberg Dep. Tr. at 7:24-5)

347. During his deposition, Mr. Greenberg could not recall any basic facts regarding the design and naming of the COMMUTE TIME shoe or any facts concerning documents which implicate him in directing the name change from COMMUTE to COMMUTE TIME. (Greenberg Dep. Tr. at 36:17-24; 37:16-19.)

348. During his deposition, Mr. Greenberg was unable to recall if he has ever authorized the filing of a lawsuit on behalf of the company. (Ex. 3, Greenberg Dep. Tr. at 63:1-3.)

349.    During his deposition, Mr. Greenberg was unable to confirm who at Skechers authorizes the filing of suits on behalf of the company. (Greenberg Dep. Tr. at 62:9-16.)

350.    Jessica Baruch has ultimate authority at Skechers to approve and introduce new shoes with new names. (Baruch Dep. Tr. at 26:12-23.)

351.    Lori Mamiya works in advertising and acts as Mr. Greenberg's assistant. (Ex. 9, Hobbs Dep. Tr. at 194:2-19.)

352.    Skechers testified it was "inspired" by some of the TRAVELTIME shoe uppers when designing the Commute Time shoes. (Ex. 8, Baruch Dep. Tr. at 165:17-167:2.)

353.    Jessica Baruch, Karianne Spear and Savva Teteriatnikov testified during their depositions that they prepared for their depositions by meeting with counsel and reviewing documents for several hours. (Ex. 8, Baruch Dep. Tr. at 68:2-15 (6-7 hours); Saunders Decl. ¶ 39, Ex. 39, Spear Dep. Tr. at 183:12-184:18 (5 hours); Saunders Decl. ¶ 10, Ex. 6,Teteriatnikov Dep. Tr. at 119:7-24).)

354.    Mr. Greenberg testified during his deposition that he had no preparation with counsel on any substantive issue or documents. (Ex. 3, Greenberg Dep. 23:9-24:1)

355.    In an email, Skechers discussed fulfilling orders for the Blair Catalog and stated, "This is a big program for [the Blair Catalog] and if it works could potentially replaced [*sic*] their million + Travel Time business." (Saunders Decl. ¶ 45, Ex. 21 at SKNY0000866.)

356.    Skechers did not waive the attorney-client privilege during discovery and has not produced any legal opinions. (Saunders Decl. ¶ 64, Ex. 40.)

357.    Easy Spirit TRAVELTIME shoes have been and/or are sold in department stores, through footwear catalog companies and online, including Macy's department stores, Bealls department stores, Nordstrom Rack stores, Boscov's department stores, and many independent shoe stores. (DeZao Decl. 8; Saunders Decl. ¶¶ 37, 39, 41, 43; Exs. 13, 15, 17. 19.)

358.    Skechers TRAVELTIME shoes have been and/or are sold in department stores, through footwear catalog companies and online, including Macy's department stores, Bealls

department stores, Nordstrom Rack stores, Boscov's department stores, and many independent shoe stores. (Saunders Decl. ¶¶ 38, 40, 42, 44; Exs. 14, 16, 18, 20.)

359.    The TRAVELTIME shoe has received unsolicited media attention.  (DeZao Decl. 13; Exs. 29-32.)

360.    In August 2017, Footwear News, the leading industry publication, described the TRAVELTIME shoe as "iconic" and a "style that continues to resonate with consumers across the board."  (Saunders Decl. ¶ 53, Ex. 29 at p. 3.)

361.    In 2019, the coveted O, The Oprah Magazine, featured the TRAVELTIME shoe in two of its articles. (Saunders Decl. ¶ 54, Ex. 31 at ESNY_033565, ESNY_033570; Saunders Decl. ¶ 55, Ex. 32 at ESNY_033583.)

362.    The WalkJogRun site referred to the TRAVELTIME shoe as "legendary." (Saunders Decl. ¶ 56, Ex. 33 at p. 8.)

363.    In July 2020, Meredith Corporation's Health Magazine described the TRAVELTIME shoe as an "unconventional design" and "unexpected style with 7,0000 perfect reviews" on Amazon. (Saunders Decl. ¶ 57, Ex. 34 at p.1.)

364.    In June 2020, Travel + Leisure, a leading travel magazine, described the TRAVELTIME shoe as the "best backless option" for slip-on sneakers and recognized the shoe's significant fan base. (Saunders Decl. ¶ 58 Saunders Decl. ¶ 58, Ex. 35 at pp. 2, 7.)

365.    Over the past 15 years, Easy Spirit and its predecessors have designed and sold numerous different upper designs with various color combinations, fabrics, materials and print designs, all of which maintain the same unique overall appearance of the TRAVELTIME shoe. (DeZao Decl. ¶ 4.)

366.    The TRAVELTIME shoe, TRAVELTIME mark and TRAVELTIME trade dress have been promoted in the United States by Easy Spirit and its predecessors in interest from launch through the present day. (DeZao Decl. ¶¶ 11, 14-16; Exhibits 1-5 to Complaint )

367.    Easy Spirit and its predecessors promoted the TRAVELTIME mark and TRAVELTIME trade dress TRAVELTIME mark and TRAVELTIME trade dress through in-

store promotional items, advertising in major publications including the New York Times and Redbook, and on e-commerce/social media sites. (DeZao Decl. ¶ 13.)

368.    As early as at least 2006, Easy Spirit launched extensive mailer and in-store initiatives for Macy's department stores that included the TRAVELTIME shoe. (DeZao Decl. ¶ 14.)

369.    The TRAVELTIME shoes are also advertised in and sold by major shoe catalog companies, including Masseys and Maryland Square. (DeZao Decl. ¶ 15; Saunders Decl. ¶ 59, Ex. 35.)

370.    Easy Spirit promotes the TRAVELTIME shoe on its website, including promotional videos and advertising that features the TRAVELTIME shoe (DeZao Decl. ¶ 16; Exhibit 2 of Complaint.)

371.    To further promote the TRAVELTIME shoe, Easy Spirit created videos that included the TRAVELTIME shoe as a part of a national marketing campaign for the Easy Spirit brand. (DeZao Decl. ¶ 16.)

372.    Easy Spirit purchased national television commercials for four-week runs in the Fall and Spring of 2018 that showcased the TRAVELTIME shoe, including commercials that ran during a sponsored segment of ABC network's *The View* and on CBS and the Hallmark Channel. (DeZao Decl. ¶ 16.)

373.    For its Spring 2019 Campaign, Easy Spirit featured the TRAVELTIME shoe through videos shown on its website and social media sites. The videos were also used for paid social media advertising. (DeZao Decl. ¶ 16.)

374.    Between 2017 and 2019, Easy Spirit spent approximately REDACTED on marketing and advertising for the brand. (Saunders Decl. ¶ 60, Ex. 36 at ESNY_036285.))

375.    In Spring 2018, Easy Spirit underwent a relaunch of the brand that caused a noticeable change in sales. (Saunders Decl. ¶ 61, Ex. 37, Deposition Transcript of Shanya Perera ("Perera Dep. Tr.") at 149:16-150.25).

376.    Easy Spirit's brand relaunch in 2018 alone cost approximately REDACTED (Saunders Decl. ¶ 62, Ex. 38 at p. 2 (ESNY_033061).)

377.    Easy Spirit's brand relaunch campaign in 2018 included subway and airport advertisements that exclusively featured the TRAVELTIME shoe. (Ex. 37, Perera Dep. Tr. 182:5-188:5; Ex. 38 p. 9 (ESNY_033068).)

378.    Although Easy Spirit does not usually register as a trademark its sub-brands or names for its shoe lines, due to the value and importance of the TRAVELTIME brand, TRAVELTIME was registered on the Principal Registry of the U.S. Patent and Trademark Office in 2014. (DeZao Decl. ¶ 5.)

379.    Easy Spirit's U.S. trademark for TRAVELTIME (Registration No. 4,505,161) has become incontestable under the Lanham Act and remains valid and enforceable. (*See* Exhibit 6 to Complaint; Saunders Decl. ¶ 65, Ex. 41.)


Respectfully submitted,

Dated: New York, New York          */s/ Darren W. Saunders*_____
       September 28, 2020           Darren W. Saunders
                                    dsaunders@peroffsaunders.com
                                    Mark I. Peroff
                                    mark.peroff@peroffsaunders.com
                                    Cassandra M. Tam
                                    cassandra.tam@peroffsaunders.com
                                    Jason H. Kasner
                                    jkasner@peroffsaunders.com
                                    PEROFF SAUNDERS P.C.
                                    745 5th Avenue | Suite 500
                                    New York, NY 10151
                                    Tel: 646.898.2030

                                    *Attorneys for Plaintiff*
                                    Easy Spirit, LLC